LOWELL INSTITUTION FOR SAVINGS *vs.* CITY OF LOWELL.

Middlesex.   January 31, 1891. — May 19, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, & MORTON, JJ.

*Deed — Condition — Servitude.*

A condition in a deed that no building shall ever be erected on the granted premises will not be held to create a servitude or right for the benefit of adjoining land, in the absence of any words in the grant itself implying it, unless the circumstances and situation at the time of the grant are such as to make it manifest that the condition is intended to be for the benefit of such adjacent land, and to be annexed to it as an appurtenance.

The owner of vacant city lots had a scheme that buildings put thereon over twelve feet in height must be of brick and stone, and generally inserted a restriction to that effect in deeds of the same. In 1839 the city council authorized the purchase of two of the lots, one on the south and the other on the north side of a street, by a vote reciting that the latter lot should be "forever kept open," and that the expenditure should be charged to the appropriation for schoolhouses. A few weeks later, the city accepted deeds simultaneously of the two lots, that of the north lot containing the condition that "no building shall ever be erected on" the granted premises, without more. The city then built a schoolhouse on the south lot. In 1844 another of the lots, which was still vacant and adjoined the north lot, being bounded on the other three sides by public streets and an open passageway, was conveyed to a savings bank by a deed which contained no mention that any right to have the north lot unbuilt upon existed for its benefit; and a bank building was erected thereon. In 1888 the city threatened to build a wooden building over twelve feet high on the north lot, and the savings bank sought in equity to prevent the erection of any building thereon. *Held,* that the plaintiff had no easement or private equitable rights to have the lot in question remain open.

BILL IN EQUITY, filed February 23, 1888, to prevent the defendant from building upon a lot of land adjoining that of the plaintiff. The case was heard by *Holmes*, J., who reported it for the consideration of the full court, and was as follows.

In 1839 the Proprietors of Locks and Canals on Merrimack River, from which corporation both parties derived title, owned a tract of vacant land in the vicinity of Middle Street in Lowell, and in its deeds of the same generally inserted, in pursuance of a scheme of improvement, a provision that no building more than twelve feet high should ever be erected on the granted premises of any other material than of brick or stone, with a

roof of slate or of some other equally incombustible material. On June 26 of that year, the city council of Lowell passed a resolution authorizing the purchase from that corporation of two lots of land, one on the south side and the other, which was the lot in question, on the north side of Middle Street, the latter to be forever kept open, and the expenditure therefor to be charged to the appropriation for grammar and primary schools. On the same day the city council passed another resolution looking to the erection of a grammar school on the lot on the southerly side of the street. On August 7 following, the defendant city purchased the two lots, and the deed accepted by it of the lot on the north side of the street contained, after the description of the granted premises, the following : " But this conveyance is made on the express condition that no building shall ever be erected on the above-mentioned premises, and also that no wall or fence shall ever be placed on the above-mentioned premises within less than five feet of Middle Street, and that the same five feet shall forever remain open as a public sidewalk," without more. Subsequently the defendant built the contemplated schoolhouse on the south lot. On May 18, 1844, the Proprietors of Locks and Canals conveyed to the plaintiff another lot of its land, which still remained vacant, adjoining the lot in question on the west, and bounded on the south by Middle Street, on the west by Shattuck Street, and on the north partly by an open square and partly by an open passageway sixteen feet wide. Immediately following the description of the lot was the restriction that no building over twelve feet in height should be erected thereon of material other than brick and stone, or with other than an incombustible roof, or should be placed within less than five feet of Middle Street or eight feet of Shattuck Street, without more. Upon this lot the plaintiff proceeded to build its bank building. On December 29, 1874, the Proprietors of Locks and Canals executed a release to the defendant city of the condition above quoted contained in the deed to it of the lot in question. At the filing of the bill, the defendant threatened and intended to erect a wooden building more than twelve feet high on the lot in question.

The plaintiff contended that, for the purposes of light and air, and for safety from fire, it had a right to prevent the defendant from building upon its lot.

The judge ruled that the lot in question was not subject to the restriction as to wooden buildings more than twelve feet high, and that the plaintiff had no easement or private equitable right to have the lot in question remain open.

*P. Webster,* (*F. L. Washburn* with him,) for the plaintiff.

*G. F. Richardson & L. T. Trull,* (*F. N. Wier* with them,) for the defendant.

C. ALLEN, J. The burden of proof is on the plaintiff to show, from the terms of the grant to the defendant, or from the situation and circumstances, that it was the intention of the grantor in inserting the condition to create a servitude or right which should inure to the benefit of the lot of land now owned by the plaintiff, and which should be annexed to it as an appurtenance. *Beals* v. *Case,* 138 Mass. 138, and cases there cited. If such a servitude was imposed for the benefit of the lot now owned by the plaintiff, it must have been at the time of the grant to the defendant. Nothing that has happened since could impair the defendant's title in this particular, without its consent. We are therefore to look to see if enough can be found in the deed itself, or in the situation and circumstances, fairly to show that any such right or easement was then created in favor of the lot which the plaintiff afterwards bought.

In the first place, it is apparent that the idea of keeping the lot open originated with the defendant. The original owners never had a scheme or plan that their lots in this neighborhood should not be built upon at all, but only that the buildings must be of brick and stone. This latter requirement is not mentioned in the deed to the defendant, and there is nothing to show that the defendant had notice of it. The ruling that the defendant's land was not subject to that restriction was right. The first suggestion of keeping the lot open is found in the vote of the city council authorizing the purchase of the two lots, one on the south side of Middle Street, and the other, being the lot now in question, on the north side, " the latter to be forever kept open "; and the expenditure to be charged to the appropriation for grammar and primary schoolhouses. On the same day a resolution was passed authorizing the erection of a grammar schoolhouse on the south lot. The deeds of the two lots were taken simultaneously a few weeks afterward. The deed of the

north lot contains the clause upon which the plaintiff now relies. It is as follows : " But this conveyance is made on the express condition that no building shall ever be erected on the above-mentioned premises, and also that no wall or fence shall ever be placed on the above-mentioned premises within less than five feet of Middle Street, and that the same five feet shall forever remain open as a public sidewalk."

It is to be observed that the deed contains no mention that this condition is imposed for the benefit of the adjacent lands, that no earlier deed had mentioned any scheme or plan to keep the lot open, that in point of fact there was no such scheme or plan, and that the lot now owned by the plaintiff was then vacant land, bounding on three sides on public streets, and in part, on one of these three sides, on a passageway. Even if facts which took place afterwards could be looked at, the deed to the plaintiff executed several years later contained no mention that any such right or easement existed for its benefit. It is more probable that the intention at the time of the grant to the defendant was to keep the lot open, to be used in connection with the schoolhouse, either as a playground or otherwise. This supposition will account for the insertion of the clause in the deed. But however this may be, an easement or servitude of this description ought not to be held to be imposed for the benefit of an adjacent lot of land, in the absence of any words in the grant itself implying it, unless the circumstances and situation at the time of the grant were such as to make it manifest that the condition or restriction or reservation was intended to be for the benefit of such adjacent lot, and to be annexed to it as an appurtenance. There is nothing in the facts of the present case sufficient to sustain the burden resting upon the plaintiff. In this respect, the case resembles *Badger* v. *Boardman*, 16 Gray, 559, *Jewell* v. *Lee*, 14 Allen, 145, *Sharp* v. *Ropes*, 110 Mass. 381, and *Beals* v. *Case*, 138 Mass. 138 ; and it differs from *Peck* v. *Conway*, 119 Mass. 546, and other cases, where the fact to be established sufficiently appeared.

*Bill dismissed.*