LUCIUS D. HAZEN *vs.* ESTELLE V. MATHEWS.

Hampden.   October 21, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Evidence*, Proof of foreign law.   *Easement*, Equitable restriction.

In the absence of evidence on the subject, it will be presumed that the law of the
State of New York as to equitable restrictions on land is the same as the com-
mon law of this Commonwealth.

An equitable restriction imposed by a deed cannot enure to the benefit of unre-
stricted land owned in common by the grantor and another not a party to the
deed.

CONTRACT for alleged breach of a covenant against incum-
brances in a deed from the defendant to the plaintiff dated
August 8, 1897, conveying a lot numbered 91 on a certain plan,
dated November 5, 1868, of land at Chester Hill, a portion of
Mount Vernon, in the State of New York.   Writ dated May
14, 1900.

At the trial in the Superior Court *Mason*, C. J. at the close
of the plaintiff's case ordered a verdict for the defendant; and
the plaintiff alleged exceptions.

It appeared at the trial, that the southerly line of Mount
Vernon is the northerly line of the city of New York, that
Mount Vernon is about thirteen miles and a fraction from the
Grand Central station and is almost entirely a residential city
of detached houses, a suburb of New York; that Chester Hill
is the chief residence portion of Mount Vernon, having the best
buildings and high priced lots; that Mount Vernon had at the
time of the trial about twenty-five thousand inhabitants, and
that the population in 1897 was probably about eighteen or
nineteen thousand.   On page 389 is a reduced copy of the plan
of November 5, 1868, omitting the dimensions of the lots, and
on page 390 is a sketch showing the situation and surroundings
of lot 91 on a larger scale.

*W. H. Brooks & W. Hamilton*, for the plaintiff.

*T. W. Kenefick, J. B. Carroll & W. H. McClintock*, for the
defendant.

LORING, J. In 1866, one Crary bought of Gilbert and Peter Shute a farm containing some fifty-one acres; and at some time not stated in the bill of exceptions he purchased another tract lying north of the Shute farm, "known as the Straub purchase."

PLAN OF LOTS
BELONGING TO
— C. CRARY —
104 BROADWAY N.Y.

CHESTER HILL, MOUNT VERNON
WESTCHESTER CO.
N. Y.

[The land south of the dotted line running from lot 6 to lot 79 belonged to the Shute farm and the land north of it belonged to the Straub purchase.]

On November 5, 1868, he filed in the office of the Register of Westchester County the accompanying plan, in which both parcels are laid out in building lots fronting on streets shown on the plan. On July 27, 1868, he sold to one McDougal lots 96 and

104, and to one Komp lot 97, referring to a map to be recorded, and they are shown on the plan recorded in the succeeding November mentioned above.

On March 1, 1869, he conveyed to one Darling an undivided

*The Lots previously conveyed are shaded.*

*The Lots retained by Crary, in addition to those previously conveyed, in conveying one half interest to Darling are marked by a line under the number.*

*The Lots subsequently conveyed by Crary and Darling are marked by intersecting diagonal lines.,*

half interest in all the tract shown on the plan, that is to say, an undivided half of the Shute purchase and the Straub purchase, excepting lots 96, 97 and 104, which had been previously con-

veyed away by him, and also lots 81, 87, 91, 102, 103, 114 and 115, which had not been conveyed. All of these lots were originally part of the Shute purchase. Crary also excepted a part of the Straub purchase, being the land included in lot 49 and a portion of lot 67 on said plan.

On March 20, 1869, he sold to one Wooster lot 91, which had been excepted from the conveyance to Darling. That lot was conveyed by Wooster to the defendant and by the defendant to the plaintiff; and in the conveyance to the plaintiff the defendant covenanted that she owned the lot free from incumbrances.

The plaintiff's contention is that by the deed from Crary to Wooster, lot 91 became subject to an incumbrance by way of equitable restriction, and this action was brought to recover from the defendant the difference between the market value of lot 91 free from incumbrances and its value subject to the equitable restriction in question.

No evidence was introduced at the trial of the fact that by the law of New York the deed from Crary to Wooster created an equitable restriction, nor of what the law of New York on that subject is. In the absence of such evidence, the case must be disposed of on the presumption that the law of New York in this respect is the same as the common law of this Commonwealth.

On April 30, 1869, two months after the conveyance of the undivided half of substantially the whole tract to Darling, and one month after the conveyance to Wooster, a plan was filed in the Register's office for Westchester County, covering the tract of land covered by the former plan and another tract of land equally large. On this second plan Summit Avenue was cut through from Sidney Place, called on the new plan Sidney Avenue, to Prospect Avenue; otherwise the lay out of the land was substantially the same. There were changes in the division of the land into lots within the side lines of the streets, which do not seem to be material in this case.

It was provided in the deed from Crary to Wooster, among other things, that neither the grantee nor his heirs or assigns should at any time thereafter erect a dwelling or other building within fifty feet of the front line of said lot. The plan referred to in the deed is the first plan on which Summit Avenue stops at

Sidney Place and is not represented as going through to Prospect Avenue as it did on the second plan. The front line of the lot is the line of Prospect Avenue.

In June, 1874, Crary and Darling conveyed to Wooster a small triangular piece of land formerly part of lot 90, left on the east side of Summit Avenue and abutting on the upper side of lot 91 ; and Wooster conveyed to Crary and Darling a small triangular lot taken from the lower end of 91, which was within the side line of Summit Avenue. There was an attempt made at this time to impose restrictions on that portion of lot 91 which fronts on Summit Avenue, but no claim for damages by reason of that is made here, and it may be disregarded.

The plaintiff's contention is that an incumbrance by way of equitable restriction was imposed on lot 91 by the deed to Wooster taken in connection with the deeds to McDougal and Komp, made before the first plan was recorded, in connection with the two plans, and also in connection with subsequent deeds of certain lots which were excluded by the judge. The subsequent deeds covered the lots lying next on the east and north of lot 91, the lot in question, and those to the west on the other side of the extension of Summit Avenue, and also lot 257 on the second plan * (formerly 98), and lots 220, 221, 219 and 222 (formerly 57, 58, 59 and part of 56 and 60).

The prior deeds to McDougal and Komp contained a clause beginning with these words : " subject, nevertheless, to the following restrictions, subject to which this conveyance is made and accepted by the party of the second part, that is to say, That neither the party of the second part, his heirs or assigns," shall in substance (1) permit any noxious trades on the premises conveyed ; (2) or erect any buildings except dwellings ; or (3) any dwelling house costing less than $2,500 ; or (4) erect any dwelling or other building within thirty feet of the front lines of said lots ; or (5) any stable or other buildings within seventy-five feet of those lines.

The restrictions in the deed of lot 91 were the same with two exceptions ; in addition to noxious trades it prohibited " any store or place for the sale of beer or liquors, or other store

---

* The second plan is not reproduced in this report. It is described in the fourth paragraph on page 391.

whatever"; and the buildings to be erected for dwellings were to be set back fifty in place of thirty feet from the front line of the lot.

In the subsequent deeds made by Darling and Crary which were excluded, the restrictions seem to be the same as in the deeds to McDougal and Komp, made before lot 91 was conveyed to Wooster.

The plaintiff contends that subsequent deeds are admissible in evidence to prove that there was a general scheme in pursuance of which his deed was made, that the deeds and plans show that there was such a scheme in the case of this land, and that the two matters in which the restrictions in the deed in question differ from those in the prior and subsequent deeds are not so important as to take lot 91 out of the scheme. On the last point he relies on *Hano* v. *Bigelow*, 155 Mass. 341, *Hills* v. *Metzenroth*, 173 Mass. 423, and *Bacon* v. *Sandberg*, 179 Mass. 396.

All that had taken place when lot 91 was conveyed to Wooster were the conveyances to McDougal and Komp of lots 96, 97 and 104, the filing of the first plan and a conveyance to Darling of an undivided half interest, free from any restrictions, of the original tract shown on the first plan, with the exception of the three lots previously conveyed and of lot 91 and of six other lots, none of which are in the immediate neighborhood of lot 91.

Had Crary inserted a clause in his deed of lot 91 stating that an easement was imposed on lot 91 for the benefit of and as appurtenant to the lots on the same side of Prospect Avenue and the other lots in that neighborhood belonging to himself and Darling, the clause would not have been effectual. An easement cannot be imposed by deed in favor of one who is a stranger to it. *Edwards Hall Co.* v. *Dresser*, 168 Mass. 136.* Darling, who owned one half of the adjoining land free from any restriction, was a stranger to the deed of lot 91 made by Crary to Wooster. An easement cannot be attached to land owned by two tenants in common by a conveyance to which only one of them is a party. We are of opinion that a similar rule applies here, and that the covenant which it is contended creates an equitable restriction is personal to the grantor and grantee,

---

* See *Haverhill Savings Bank* v. *Griffin*, post, 419.

and does not enure to the benefit of subsequent owners of the land.

In the case at bar it appeared that Crary is dead. The restrictions contained in the deed of lot 91 are at an end, and the presiding judge was right in excluding the subsequent deeds and in directing a verdict for the defendant.

In stating the principle of equitable restrictions in *Whitney* v. *Union Railway*, 11 Gray, 359, 365, Bigelow, J. confines the doctrine to a case where it was the intention to create one " for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel."

*Exceptions overruled.*