THORNTON A. SNOW & others *vs.* ARIE VAN DAM & others.

Middlesex.    December 3, 1934. — July 29, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Equitable Restrictions.    Zoning.*

Discussion by LUMMUS, J., of equitable restrictions.

An equitable restriction, that "only one dwelling house may be maintained" on certain land, was violated by the erection of a business building thereon.

Municipal zoning of a parcel of land does not affect existing equitable restrictions thereon.

Restrictions first placed upon part of a single tract of land many years after like restrictions were placed upon lots sold in another part of the tract, where the later restrictions appeared to have been imposed pursuant to the original general scheme for development of the entire tract, could be enforced in equity by the owners of the lots earlier sold.

In a suit in equity by lot owners in a tract against another lot owner to enforce one of several equitable restrictions, it was no defence that other lot owners not parties to the suit had violated some of the restrictions without action by the plaintiffs; nor that some of the plaintiffs had violated another, less important, restriction; nor that the defendant's grantor had committed a minor infraction of the restriction in question without objection by the plaintiffs.

Equitable restrictions limited to thirty years under G. L. (Ter. Ed.) c. 184, § 23, run as against any particular land in a tract from the

time they are imposed upon that land, although imposed pursuant to a general scheme originated earlier for development of the entire tract; and in the case of registered land the thirty years run from the date of registration of the instrument imposing the restrictions.

BILL IN EQUITY, filed in the Superior Court on June 13, 1933.

By order of *Walsh,* J., there were entered an interlocutory decree confirming a master's report, and a final decree "permanently" enjoining the defendants "from erecting, using or maintaining any building" "for other than dwelling house purposes" on the land of the defendant Van Dam. The defendants appealed from the final decree.

The case was argued at the bar in December, 1934, before *Rugg,* C.J., *Crosby, Field, Donahue,* & *Lummus,* JJ., and afterwards was submitted on briefs to *Pierce* & *Qua,* JJ.

*W. G. Clark,* (*C. R. Clark* & *E. Morley* with him,) for the defendants.

*L. E. Green,* (*A. F. Richard* with him,) for the plaintiffs.

LUMMUS, J. This suit, although brought in Middlesex County, relates to land on the seashore at Brier Neck in Gloucester in Essex County, title to which, after the decision in *Luce* v. *Parsons,* 192 Mass. 8, was registered on September 5, 1906, in the name of one Luce, from whom title soon passed to one Shackelford. The tract so registered was bounded northerly by a line through a pond not far northerly from a county road called Thatcher Road, which ran through the tract from west to east; easterly by land of other owners; southerly by the Atlantic Ocean, where there was a fine bathing beach; and westerly by Witham Road. The entrance to the tract was at the northwesterly corner, where is situated the lot now owned by the defendant Van Dam, which is the larger part of a triangular piece of land lying north of Thatcher Road and enclosed by Thatcher Road, Witham Road and another road.

The northerly part of the tract, including the lot of the defendant Van Dam, is low and marshy. When the tract was registered in 1906, this northerly part was deemed unsuitable for building, and worthless, and consequently was not divided into lots on the earlier plans. Thatcher Road

is a public way on which electric cars used to run.   There is no summer residence on the north side of that way, and only one bounding on that way on the south side.

From Thatcher Road, going south, there is a fairly sharp ascent to the top of a low hill, from which there is a gentle slope southward to the beach.   This hill and slope were in 1906, and still are, well adapted to summer residences.   In 1907 the whole tract, except the part north of Thatcher Road, was divided into building lots.   By later plans some of the lots were further subdivided and the boundaries of others were changed.   In all, about a hundred building lots were laid out.   Each of the plaintiffs owns one of these building lots, either on the hill or on the southerly slope, on which he has built a summer residence.

Between July 8, 1907, and January 23, 1923, almost all the lots into which the part of the tract south of Thatcher Road was divided, including the lots of most of the plaintiffs, were sold at various times by the general owner of the tract to various persons.   With negligible exceptions, the deeds contained uniform restrictions, of which the material one is that "only one dwelling house shall be erected or maintained thereon at any given time which building shall cost not less than $2500 and no outbuilding containing a privy shall be erected or maintained on said parcel without the consent in writing of the grantor or their [*sic*] heirs."   The entire unsold remainder of the land south of Thatcher Road was conveyed, on June 15, 1923, by Shackelford, the general owner of the unsold parts of the tract, to J. Richard Clark, subject to similar restrictions.

The low and marshy land north of Thatcher Road was first divided, on a revised plan of 1919, into three parcels, called C, D and E.   The revised plan covered the whole Brier Neck tract.   On January 23, 1923, about five months before the deed to J. Richard Clark, already mentioned, said Shackelford conveyed said lots C, D and E to one Robert C. Clark, subject to the following restrictions: "Only one dwelling house may be maintained on each of said parcels of land at any given time, which dwelling house shall cost not less than Twenty-five Hundred Dollars

($2500) unless plans and specifications for a dwelling house of less cost shall be approved in writing by the grantor of said parcels of land, and no outbuilding containing a privy shall be maintained on either of said parcels of land without the consent in writing of the grantor . . . ." Lot D is the lot of which the larger part is now owned by the defendant Van Dam, having been conveyed to him by Robert C. Clark on February 18, 1933, subject to the restrictions contained in the deed to him "in so far as the same may be now in force and applicable." This phrase did not purport to create any new restriction, and could have no such effect. *Sargent* v. *Leonardi*, 223 Mass. 556, 558, 559. The defendants have erected on lot D a large building to be used for the sale of ice cream and dairy products and the conducting of the business of a common victualler. The plaintiffs bring this suit for an injunction, claiming a violation of the restrictions. We think that the erection of a building to be used for business purposes was a violation of the language of the restriction. *Powers* v. *Radding*, 225 Mass. 110, 114. The zoning of the land for business in 1927 by the city of Gloucester could not operate to remove existing restrictions. *Jenney* v. *Hynes*, 282 Mass. 182, 194.

Prior to the conveyance from Shackelford to Robert C. Clark on January 23, 1923, there could not have been, under the law of this Commonwealth, any enforceable restriction upon lot D. *Sprague* v. *Kimball*, 213 Mass. 380. If any now exists in favor of the lands of the plaintiffs, it must have been created by that deed.

A restriction, to be attached to land by way of benefit, must not only tend to benefit that land itself (*Norcross* v. *James*, 140 Mass. 188, 192; *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180; *Sheff* v. *Candy Box Inc.* 274 Mass. 402, 406; *Parsons* v. *Duryea*, 261 Mass. 314), but must also be intended to be appurtenant to that land. *Clapp* v. *Wilder*, 176 Mass. 332, 339. If not intended to benefit an ascertainable dominant estate, the restriction will not burden the supposed servient estate, but will be a mere personal contract on both sides. *Lowell Institution for Savings* v.

*Lowell,* 153 Mass. 530.   *Bessey* v. *Ollman,* 242 Mass. 89, 91.
*Hill* v. *Levine,* 252 Mass. 513, 516, 517.   *Orenberg* v. *John-
ston,* 269 Mass. 312.   *London County Council* v. *Allen,*
[1914] 3 K. B. 642.   *In re Sunnyfield,* [1932] 1 Ch. 79.
*In re Union of London & Smith's Bank Limited's Convey-
ance,* [1933] Ch. 611.

In the absence of express statement, an intention that a
restriction upon one lot shall be appurtenant to a neigh-
boring lot is sometimes inferred from the relation of the lots
to each other. *Peck* v. *Conway,* 119 Mass. 546.   *Hogan* v.
*Barry,* 143 Mass. 538, 539.   *Welch* v. *Austin,* 187 Mass.
256.   *Codman* v. *Bradley,* 201 Mass. 361, 368.   *Lodge* v.
*Swampscott,* 216 Mass. 260.   See also *Clapp* v. *Wilder,* 176
Mass. 332.   But in many cases there has been a scheme or
plan for restricting the lots in a tract undergoing develop-
ment to obtain substantial uniformity in building and use.
The existence of such a building scheme has often been
relied on to show an intention that the restrictions imposed
upon the several lots shall be appurtenant to every other
lot in the tract included in the scheme. *Hano* v. *Bigelow,*
155 Mass. 341, 343, and cases cited. *Jackson* v. *Stevenson,*
156 Mass. 496, 501. *McCusker* v. *Goode,* 185 Mass. 607, 611.
*Maclary* v. *Morgan,* 230 Mass. 80, 82. *Wilson* v. *Middlesex
Co.* 244 Mass. 224, 231. *Lacentra* v. *Valeri,* 244 Mass. 404,
406.   *Abbott* v. *Steigman,* 263 Mass. 585.   In some cases
the absence of such a scheme has made it impossible to
show that the burden of the restriction was intended to be
appurtenant to neighboring land. *Sharp* v. *Ropes,* 110
Mass. 381. *Webber* v. *Landrigan,* 215 Mass. 221. *Stewart*
v. *Alpert,* 262 Mass. 34.   In the present case, unless the lots
of the plaintiffs and the defendant Van Dam were included
in one scheme of restrictions, there is nothing to show that
the restrictions upon the lot of the defendant Van Dam
were intended to be appurtenant to the lots of the plaintiffs.

What is meant by a "scheme" of this sort?   In England,
where the idea has been most fully developed, it is estab-
lished that the area covered by the scheme and the restric-
tions imposed within that area must be apparent to the
several purchasers when the sales begin.   The purchasers

must know the extent of their reciprocal rights and obligations, or, in other words, the "local law" imposed by the vendor upon a definite tract. *Reid* v. *Bickerstaff,* [1909] 2 Ch. 305. *Kelly* v. *Barrett,* [1924] 2 Ch. 379, 399, *et seq.* Where such a scheme exists, it appears to be the law of England and some American jurisdictions that a grantee subject to restrictions acquires by implication an enforceable right to have the remaining land of the vendor, within the limits of the scheme, bound by similar restrictions. *Spicer* v. *Martin,* 14 App. Cas. 12, 24, 25. *In re Birmingham & District Land Co.* [1893] 1 Ch. 342, 351, 352. *Jaeger* v. *Mansions Consolidated Ltd.* 87 L. T. (N. S.) 690, 697. *Gedge* v. *Bartlett,* 17 T. L. R. 43. *Sanborn* v. *McLean,* 233 Mich. 227, *S. C.* 60 A. L. R. 1212. *Johnson* v. *Mt. Baker Park Presbyterian Church,* 113 Wash. 458. See also *Nashua Hospital Association* v. *Gage,* 85 N. H. 335, 341, 342. Traces of that idea can be found in our own reports. *McCusker* v. *Goode,* 185 Mass. 607, 611. *Roak* v. *Davis,* 194 Mass. 481, 485. But it was settled in this Commonwealth by *Sprague* v. *Kimball,* 213 Mass. 380, that the statute of frauds prevents the enforcement against the vendor, or any purchaser from him of a lot not expressly restricted, of any implied or oral agreement that the vendor's remaining land shall be bound by restrictions similar to those imposed upon lots conveyed. Only where, as in *Kimball* v. *Commonwealth Avenue Street Railway,* 173 Mass. 152, *Riley* v. *Barron,* 227 Mass. 325, 329, *Beekman* v. *Schirmer,* 239 Mass. 265, 270, *Lacentra* v. *Valeri,* 244 Mass. 404, and *McLaughlin* v. *Eldredge,* 266 Mass. 387, the vendor binds his remaining land by writing, can reciprocity of restriction between the vendor and the vendee be enforced.

Nevertheless, the existence of a "scheme" continues to be important in Massachusetts for the purpose of determining the land to which the restrictions are appurtenant. Sometimes the scheme has been established by preliminary statements of intention to restrict the tract, particularly in documents of a public nature (*Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378; compare *Beals* v. *Case,* 138 Mass. 138, 141, 142), or in a recorded plan. *Sprague* v.

*Kimball,* 213 Mass. 380, 383. *Oliver* v. *Kalick,* 223 Mass. 252. More often it is shown by the substantial uniformity of the restrictions upon the lots included in the tract. *Nottingham Patent Brick & Tile Co.* v. *Butler,* 15 Q. B. D. 261, 269, affirmed 16 Q. B. D. 778. In some jurisdictions the logic of the English rule, that the extent and character of the scheme must be apparent when the sale of the lots begins, has led to rulings that the restrictions imposed in later deeds are not evidence of the existence or nature of the scheme. *Werner* v. *Graham,* 181 Cal. 174, 183–186. *Sailer* v. *Podolski,* 12 Buch. 459, 464. See also *Nashua Hospital Association* v. *Gage,* 85 N. H. 335, 340, 341. In the present case there is no evidence of a scheme except a list of conveyances of different lots from 1907 to 1923 with substantially uniform restrictions. Although the point has not been discussed by this court, the original papers show, more clearly than the reports, that subsequent deeds were relied on to show a scheme existing at the time of the earlier conveyances to the parties or their predecessors in title, in *Hills* v. *Metzenroth,* 173 Mass. 423, *Bacon* v. *Sandberg,* 179 Mass. 396, *Stewart* v. *Finkelstone,* 206 Mass. 28, and *Storey* v. *Brush,* 256 Mass. 101. See also *Hazen* v. *Mathews,* 184 Mass. 388, 393. Apparently in Massachusetts a "scheme" has legal effect if definitely settled by the common vendor when the sale of lots begins, even though at that time evidence of such settlement is lacking and a series of subsequent conveyances is needed to supply it. In *Bacon* v. *Sandberg,* 179 Mass. 396, 398, it was said, "the criterion in this class of cases is the intent of the grantor in imposing the restrictions."

Neither the restricting of every lot within the area covered, nor absolute identity of restrictions upon different lots, is essential to the existence of a scheme. *Bacon* v. *Sandberg,* 179 Mass. 396, 398. *Allen* 'v. *Barrett,* 213 Mass. 36, 39. *Hartt* v. *Rueter,* 223 Mass. 207, 211. *Oliver* v. *Kalick,* 223 Mass. 252, 254. *Sargent* v. *Leonardi,* 223 Mass. 556. *Storey* v. *Brush,* 256 Mass. 101, 106. But extensive omissions or variations tend to show that no scheme exists, and that the restrictions are only personal contracts. *Beals*

v. *Case*, 138 Mass. 138. *St. Patrick's Religious, Educational & Charitable Association* v. *Hale*, 227 Mass. 175.

The existence of a "scheme" is important in the law of restrictions for another purpose, namely, to enable the restrictions to be made appurtenant to a lot within the scheme which has been earlier conveyed by the common vendor. In the present case the lots of some of the plaintiffs were sold before, and the lots of others after, the conveyance from Shackelford to Robert C. Clark on January 23, 1923, which first imposed a restriction upon the lot now owned by the defendant Van Dam. The plaintiffs whose lots were sold before January 23, 1923, cannot claim succession to any rights of Shackelford or of land then retained by him. In general, an equitable easement or restriction cannot be created in favor of land owned by a stranger. *Hazen* v. *Mathews*, 184 Mass. 388. Compare *Vogeler* v. *Alwyn Improvement Corp.* 247 N. Y. 131; *Lister* v. *Vogel*, 110 N. J. Eq. 35. Nevertheless an earlier purchaser in a land development has long been allowed to enforce against a later purchaser the restrictions imposed upon the latter by the deed to him in pursuance of a scheme of restrictions. *Jeffries* v. *Jeffries*, 117 Mass. 184, 190. *Hopkins* v. *Smith*, 162 Mass. 444. *Evans* v. *Foss*, 194 Mass. 513, 515, and cases cited. *Elliston* v. *Reacher*, [1908] 2 Ch. 374, 384. *Roberts* v. *Scull*, 13 Dick. (N. J.) 396, 402. *Beattie* v. *Howell*, 98 N. J. Eq. 163. This was done, the original papers show, in *Bacon* v. *Sandberg*, 179 Mass. 396, and *Stewart* v. *Finkelstone*, 206 Mass. 28, 34. In *Evans* v. *Foss, supra*, the restrictions were imposed by a deed to the common predecessor of the parties, and then title to part of the land passed to the plaintiff before title to the residue passed to the defendant. See also *Dana* v. *Wentworth*, 111 Mass. 291; *Tobey* v. *Moore*, 130 Mass. 448; *Maclary* v. *Morgan*, 230 Mass. 80. Earlier as well as later purchasers of lots within the area covered by the scheme acquire such an interest in the restrictions that the common vendor cannot release them. *Hopkins* v. *Smith*, 162 Mass. 444. *Ivarson* v. *Mulvey*, 179 Mass. 141. *Goulding* v. *Phinney*, 234 Mass. 411, 413.

The rationale of the rule allowing an earlier purchaser to enforce restrictions in a deed to a later one pursuant to a building scheme, is not easy to find. *De Gray* v. *Monmouth Beach Club House Co.* 5 Dick. (N. J.) 329, 335–341. The simple explanation that the deed to the earlier purchaser, subject to restrictions, implied an enforceable agreement on the part of the vendor to restrict in like manner all the remaining land included in the scheme (Dean Stone, now Mr. Justice Stone, in 19 Colum. L. Rev. 177, 187), cannot be accepted in Massachusetts without conflict with *Sprague* v. *Kimball*, 213 Mass. 380. In *Bristol* v. *Woodward*, 251 N. Y. 275, 288, Cardozo, C.J., said, "If we regard the restriction from the point of view of contract, there is trouble in understanding how the purchaser of lot A can gain a right to enforce the restriction against the later purchaser of lot B without an extraordinary extension of *Lawrence* v. *Fox* (20 N. Y. 268). . . . Perhaps it is enough to say that the extension of the doctrine, even if illogical, has been made too often and too consistently to permit withdrawal or retreat."

It follows from what has been said, that if there was a scheme of restrictions, existing when the sale of lots began in 1907, which scheme included the lands of the plaintiffs and of the defendant Van Dam, and if the restrictions imposed upon the land of the defendant Van Dam in 1923 were imposed in pursuance of that scheme, then all the plaintiffs are entitled to relief, unless some special defence is shown. The burden is upon the plaintiffs to show the existence of such a scheme. *Lowell Institution for Savings* v. *Lowell*, 153 Mass. 530, 533. *American Unitarian Association* v. *Minot*, 185 Mass. 589, 595. In our opinion they have done so. Unquestionably there was a scheme which included all the land south of Thatcher Road. The real question is, whether in its origin it included the land north of that road, where is situated the lot of the defendant Van Dam. That lot lies at the gateway of the whole development. One must pass it to visit any part of Brier Neck. The use made of that lot tends strongly to fix the character of the entire tract. It is true, that the land north

of Thatcher Road was not divided into lots until 1919, but it was shown on all the plans from the beginning. The failure to divide it sooner was apparently due to a belief that it could not be sold, not to an intent to reserve it for other than residential purposes. We think that the scheme from the beginning contemplated that no part of the Brier Neck tract should be used for commercial purposes. When the lot of the defendant Van Dam was restricted in 1923, the restriction was in pursuance of the original scheme and gave rights to earlier as well as to later purchasers.

The violation of some of the restrictions by some of the purchasers of lots in the tract, without action by these plaintiffs, does not affect their right to enforce the restrictions against the defendants. *Bacon* v. *Sandberg,* 179 Mass. 396, 399. *Codman* v. *Bradley,* 201 Mass. 361, 369. *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378, 385, 386, and cases cited. There has been no fundamental change in the character of Brier Neck, making inequitable the specific enforcement of the restrictions, within the rule of *Jackson* v. *Stevenson,* 156 Mass. 496. See *Massachusetts Institute of Technology* v. *Boston Society of Natural History,* 218 Mass. 189, 196; *Goulding* v. *Phinney,* 234 Mass. 411; *Vorenberg* v. *Bunnell,* 257 Mass. 399, 408; *Jenney* v. *Hynes,* 282 Mass. 182, 195. Neither does the violation of some of the less important restrictions, but not of the restriction in question, by some of the plaintiffs, deprive them, much less the other plaintiffs, of the right to relief in equity. *Bacon* v. *Sandberg,* 179 Mass. 396, 400. *Stewart* v. *Finkelstone,* 206 Mass. 28, 37. *Loud* v. *Pendergast,* 206 Mass. 122, 124. *Wilson* v. *Middlesex Co.* 244 Mass. 224, 231. The failure of the plaintiffs to object to a petty business carried on by the grantor of the defendant Van Dam does not bar them from objecting to the large project now undertaken. *Daly* v. *Foss,* 199 Mass. 104. *Fenton* v. *Malfas,* 286 Mass. 339.

G. L. (Ter. Ed.) c. 184, § 23, provides that "restrictions, unlimited as to time, . . . shall be limited to the term of thirty years after the date of the deed or other instrument . . . creating them . . . ." The defendants contend that

the restrictions in question were created in 1907 and therefore will expire in 1937 under the statute. But it has already been shown that no restriction existed upon the lot of the defendant Van Dam until January 23, 1923, when the conveyance to his grantor was made. Although the deed was dated January 19, 1923, the registration, which was the operative act of conveyance (G. L. c. 185, § 57), took place on January 23, 1923. The latter date is the one from which the period of thirty years runs. The final decree is to be modified by striking out the word "permanently" in paragraphs 4 and 5, and by inserting a provision limiting the period of the injunction to the time prior to and including January 23, 1953. As thus modified, the final decree is affirmed, with costs.

*Ordered accordingly.*