Trombly, J. *
On October 25, 2001, Well-Built Homes, Inc. (“Well-Built”) filed Miscellaneous Case No. 275679 in the Land Court seeking a declaration pursuant to G.L.c. 231, that certain restrictions burden property in a division of land owned by Richard A. Shuster (“Richard” or “Shuster”). Shuster filed an answer and counterclaim on November 21, 2001. On November 26, 2001, Shuster filed an action in the Norfolk County Superior Court against Well-Built concerning the same property as in the Land Court case seeking damages sounding in tort, matters over which the Land Court does not have jurisdiction. By Order dated January 4, 2002, and with the consent of counsel for Well-Built and Shuster, the then Chief Justice for Administration and Management of the Trial Court designated then Land Court Chief Justice Peter W. Kilbom “or his designee” to sit in the Superior Court “for the sole purpose of hearing and determining (or otherwise supervising) the disposition of’ the case then pending in the Superior Court. Chief Justice Kilbom assigned the case to me prior to his retirement.
In addition to pleadings filed by Shuster and Well-Built, Troy R. Lester and Mary M. Lester (the “Lesters”) owners of land in the subdivision, and the Fall River Five Cents Savings Bank have each filed answers.[1] On November 26, 2002, Shuster filed a Motion for Summary Judgment together with a Statement of Material *266 Facts, a Statement of Legal Elements and Brief, an Affidavit of Richard A. Shuster, and an Affidavit of Steven M. Brody. Well-Built filed an opposition and Cross Motion for Summary Judgment on February 6, 2003, together with a Memorandum of Law, and Affidavits of Sarah H. Broughel and James E. Holding. Contending that their lot would be adversely affected if the restrictions are not enforced, the Lesters filed a memorandum in opposition to Shuster’s motion on February 5, 2003. A hearing was held (Trombly, J.) on February 13, 2003, at which the cross motions for summary judgment as well as Well-Built’s Motion to Strike Evidence which Amounts to an Offer of Compromise were argued. All motions were taken under advisement at that time, and the court has issued a separate order concerning the motion to strike.
Summary judgment is appropriate where there are no genuine issues of material fact and where the summary judgment record entitles the moving parly to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The following facts are properly before the court for its consideration based on materials submitted conformably with Mass.R.Civ.P. 56(c) and (e) and are undisputed.
1. In 1988 Shuster and his then wife, Barbara K. Shuster (“Barbara”), subdivided a certain parcel of land owned by them in Dartmouth and created the Liberty Tree Subdivision (the “Liberty Tree plan”). The Liberty Tree plan, showing twenty lots, was approved by the Dartmouth Planning Board and is recorded at the Bristol (South District) Registry of Deeds at Plan Book 121, Page 113.[2]
2. Barbara commenced proceedings, also in 1988, in the Bristol County Probate and Family Court seeking a divorce from Richard (Case No. 88D-1109-D1). Judgment of Divorce issued, and became absolute on December 24, 1990.
3. As part of the divorce judgment was a separation agreement which involved, inter alia, a transfer of property by and between the parties. Specifically, Richard and Barbara agreed to transfer Lots 5 and 20 on the aforementioned Liberty Tree plan to Richard, with Richard deeding to Barbara his interest in the remaining lots in the subdivision. The agreement also required Barbara to convey to Richard, in addition to lots 5 and 20, an easement to pass over the Street shown on the subdivision plan as Liberty Tree Drive.
4. A separation agreement, executed in 1990 called for the conveyance of Lots 5 and 20, plus the easement, to Richard, and contained the following language.
HUSBAND further acknowledges that there will be restrictions and obligations imposed upon all of the buildable lots in the aforesaid Liberty Tree Subdivision which have yet to be prepared. HUSBAND agrees either to (a) take title of lots 5 and 20, subject to any and all obligations and restrictions as are imposed upon all of the buildable lots in the Liberty Tree Subdivision, provided the same are consistently applied in a nondiscriminatoiy manner to all of the buildable lots in the subdivision, or (b) execute any and all documents reasonably required to subject said Lots 5 and 20 to such restrictions and obligations in the event that they are imposed on the balance of the buildable lots in the Liberty Tree Subdivision subsequent to the date that WIFE conveys Lots 5 and 20 to HUSBAND, provided the same are consistently applied in a nondiscriminatoiy manner to all of the buildable lots in the subdivision. It is understood and agreed that the restrictions and obligations that will be imposed on the Liberty Tree Subdivision shall apply to Lot 20 only to the extent that new structures are added to the property or existing structures are rebuilt or expanded.
It is to be noted that this instrument refers to land within the “Liberty Tree Subdivision.”
5. An “Affidavit Relating to Title” which included the pertinent portions of the separation agreement, and also a certificate signed by Attorney Barrett A. Hurwitz, was recorded on or about March 25, 1993, in Book 3062, Page 299.
6. On January 11, 1999, Barbara and Well-Built entered into a purchase and sales agreement for land as shown on a definitive plan entitled “Liberty Tree Drive” dated January 5, 1999. Under the terms of this agreement it was Barbara’s obligation to secure the necessary subdivision approvals. She submitted the plan and application consisting of 15 lots for approval to the Dartmouth Planning Board (“Planning Board”) on January 22, 1999. The Planning Board approved the plan with conditions on April 6, 1999, referring to the subdivision as “Liberty Tree” in its notice of approval to the town clerk. This plan did not include Lots 5 and 20 which were to be conveyed to Richard.
7. Shortly after the approval by the Planning Board, James E. Holding (“Holding”), the president of Well-Built, contacted Barbara’s representatives and requested that the name of the subdivision be changed to “The Woods at Padanaram Village” (the “Woods plan”). The name was, in fact, changed and the plan was revised in accordance with the conditions attached to the April 6 vote. The resulting definitive subdivision plan, issued on April 15, 1999, is entitled “The Woods at Padanaram Village,” and was endorsed by the Planning Board on August 9, 1999, and recorded in Plan Book 143, Page 44.
8. By deed dated August 5, 1999, and recorded on August 9, 1999, in Book 4485, Page213, the same day on which the Planning Board endorsed the Woods plan, Richard and Barbara conveyed Lots 5 and 20 to Richard.[3] The deed described the lots as being shown on the 1988 plan of “Liberty Tree” recorded in Plan Book 121, Plan 113, granted Richard easements to use *267 the entire length of Liberty Tree Drive, and also contained the following language which is at the center of this litigation.
In addition, the Grantee acknowledges that there will be restrictions and obligations imposed upon all of the lots in the Subdivision (except Parcel A as shown on the Plan) and the Grantee for himself and his successors and assigns agrees that any and all obligations and restrictions imposed upon all lots of the Subdivision (except Parcel A as shown on the Plan), provided the same are consistently applied in a nondiscriminatory manner, shall also be imposed upon Lots 5 and 20 at such time as these obligations and restrictions are imposed upon all of the other lots in the Subdivision (except Parcel A as shown on the Plan). It is understood and agreed that to the extent that the restrictions and obligations apply to structures located on the lots in the Subdivision, such restrictions and obligations shall only apply to Lot 20 to the extent new structures are added or existing structures are rebuilt or expanded.
9. Also by deed dated August 5, 1999, and recorded immediately after the deed of Lots 5 and 20 to Richard, Barbara and Richard conveyed the remaining lots in the Liberty Tree subdivision to Barbara, this deed also referring to the Liberty Tree plan at Plan Book 121, Plan 113. The deed contains the following language.
excluding, however, that certain parcel conveyed to Richard P. and Jayne M. Brisson by deed dated July 10, 1986 and recorded in Book 1973, Page 541, meaning and intending to convey all right, title and interest in the land heretofore owned by the Grantors other than those parcels previously conveyed to Richard A. Shuster by deed of even date and recorded herewith, and all appurtenant rights of record, including without limitation, those rights and easements reserved in the deed to Richard A. Shuster of even date and record herewith.
This conveyance is subject to and with the benefit of all encumbrances, restrictions and easements of record to the extent the same are in force and effect.
10. On August 5, 1999, the same date on which the deeds from Richard and Barbara to each other were executed but before they were recorded, Holding sent a letter to Richard in response to an inquiry from Richard, confirming that Well-Built intended to proceed with the development of the “Woods at Padanaram Village.” The letter also addressed several concerns which Richard had raised regarding access to his driveway at Lot 20 during development of the Woods plan. Richard denies ever having received this letter, stating that it was addressed to an incorrect location in Dartmouth at which he had not resided for several years.
11. On September 1, 1999, pursuant to the purchase and sales agreement entered into on January
11, 1999, Well-Built acquired Lots 1 through 15, inclusive, in the Woods plan subdivision by a deed recorded on September 9, 1999, in Book 4512, Page 23. Lots 5 and 20, previously conveyed to Richard, were not included in the Woods plan and were not, of course, conveyed by this deed. The lots which are the subject of this deed are the same lots which are the subject of the August 5, 1999, deed to Barbara and described in that deed as being shown on the 1988 Liberty Tree Definitive Plan.
12. On August 1, 2000, Well-Built further amended the Woods plan by filing an Approval Not Required (“ANR”) plan with the Planning Board which included additional land and subdivided three of the lots shown thereon into six lots. The new plan reflected the purchase of additional land by Well-Built and expanded the perimeter of the Woods plan subdivision. It is Well-Built’s contention that the newly configured lots were consistent in size with the lots shown on the 1999 subdivision plan.
13. On August 8, 2000, after recording the newly endorsed ANR plan, Well-Built executed and recorded a Declaration of Covenants imposing restrictions upon the lots included within the Woods plan. This document, recorded at Book 4749, Page 35, does not purport to impose restrictions on Lots 5 and 20, the lots owned by Richard. The purpose of the restrictions, as set forth in the declaration, was “to provide for an attractive, aesthetically compatible development.”
14. In July 2001, Richard subdivided Lots 5 and 20 by means of an ANR plan which was approved by the Planning Board on August 13, 2001, and recorded at the Registry of Deeds.
15. Also in July 2001, Richard entered into an agreement to sell a portion of what was formerly Lot 20, with the existing house thereon, to Marvin Richard Harris (“Harris”). In preparation for the closing, Harris’s attorney raised an issue as to whether the aforementioned restrictions affected the lot about to be purchased by Harris. In response to this inquiry, Rickel Shuster (“Rickel”), an attorney as well as Richard’s present wife, contacted Holding seeking confirmation that the restrictions did not burden Richard’s lots. A release form was prepared by or for Rickel and was forwarded to Holding for his signature, but was never signed.
16. On October 10, 2001, Well-Built executed and recorded at Book 5182, Page 340 a document entitled “Clarification of Covenants and Restrictions” (“Clarification”) which purported to subject Richard’s Lots 5 and 20 and the lots in the Woods plan to the restrictions previously recorded in Book 4749, Page 135. Well-Built believes that the restrictions prohibit the subdivision of Lots 5 and 20.
17. Richard and Well-Built have been conferring and disagreeing over a period of years concerning Richard’s claimed right to tie into the sewer and road *268 systems of the Woods plan. Well-Built’s counsel wrote to Richard’s then counsel a few days after the recording of the Clarification.[4] The sale to Harris fell through shortly thereafter.
18. Both Barbara and Richard have executed and recorded releases of the rights to impose restrictions on Lots 5 and 20.
The instant cross motions for summary judgment require this court to determine whether the language concerning the right to create restrictions, as contained in the deed conveying Lots 5 and 20 from Barbara and Richard to Richard created a right to impose restrictions which would run with the land, or whether it was merely a personal right which could only be enforced by the grantor. The court must decide this question applying the standard for grant of summary judgment and relying on the facts in the summary judgment materials. Summary judgment is appropriate when there are no disputed material facts and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). I find and rule that there are no outstanding issues of material fact which would preclude a disposition as a matter of law. Summary judgment is thus appropriate in these proceedings. Richard contends that since the deed lacks a description of the land to be benefitted by the “restrictions,” and also any language indicating that the right to impose restrictions would inure to the benefit of assigns or successors of the grantor, any such right must be viewed as personal. See Lowell Institution for Savings v. Lowell., 153 Mass. 530, 532 (1891). Well-Built, however, asserts that as the present owner of the land formerly owned by Barbara it has the right to impose restrictions on Lots 5 and 20.
In several instances throughout the summary judgment record Richard has inserted what he claims to have been his intentions and understandings related to the application of restrictions to Lots 5 and 20. Well-Built asserts, and this court agrees that disputed statements with respect to the intent of a party to a deed or other instrument conveying real estate constitutes parol evidence, which is neither relevant nor admissible to vary the interpretation of the document at issue. “(D]eeds, especially conveyances of real estate, cannot be varied, controlled, or contradicted, by parol evidence.” Harlow v. Thomas, 15 Pick. 66, 69 (1833); Townsend v. Weld, 8 Mass. 146, 147 (1811). Thus, although not the subject of a motion to strike, any statements relating to Richard’s intentions or understanding concerning the application of restrictions are treated by the court as not being part of the summary judgment record.
In his Motion for Summary Judgment Shuster contends that the right to impose future restrictions on Lots 5 and 20 was personal to himself and Barbara because the deed from Barbara and Richard to Richard of Lots 5 and 20 when viewed together with the divorce agreement, demonstrates that the right to impose restrictions on those lots was personal and did not run with the land. “As a general rule, courts will construe restrictions narrowly in favor of limiting restraints on property.” Brennan v. Kos, 15 Mass.App.Ct. 513, 514 (1983). Unless a use restriction benefits an ascertainable dominant estate, it will be considered a personal contract between the parties. Snow v. Van Dam, 291 Mass. 477, 480 (1935). If the rights are found to be personal, they cannot be enforced by a successor to the grantor. Cogliano v. Lyman, 370 Mass. 508, 512 (1976); Greenberg v. Johnston, 269 Mass. 312, 316 (1929). Shuster relies primarily on the fact that the deed did not say for whose benefit the restrictions would be imposed nor what land would be benefitted by the restrictions. Where a supposed restriction does not benefit an “ascertainable dominant estate, the restriction will not burden the supposed servient estate, but will be a mere personal contract on both sides.” Snow, 291 Mass, at 480. Although the deed references the Liberty Tree plan, it does not identify the land to be benefitted by the imposition of future restrictions. Harrington v. Joyce, 316 Mass. 187, 189-90 (1944) (failure to specify benefitted land resulted in restrictions being invalidated).
Further, Shuster argues that if, in fact, any restrictions were created by the deed, said restrictions would apply only to the abandoned Liberty Tree plan and would not be enforceable by the owners or developer of the Woods plan because the two plans are materially different. Although the Liberty Tree plan and the Woods plan are similar, the Woods plan added additional land, changed lot sizes, varied lot numbers, and most importantly did not include Lots 5 and 20 in the plan. Furthermore, the Declaration of Covenants recorded by Well-Built on August 8, 2000 identified the Woods plan as the subject of the restrictions and did not purport to identify Lots 5 and 20. It is axiomatic that restrictions must identify the burdened land by reference to a recorded deed book and page number.
Additionally, Shuster argues that Well-Built’s Declaration of Covenants does not constitute a “common scheme” nor meet the requirements set forth in G.L.c. 184, §§27-30 thereby rendering the restrictions unenforceable as to Lots 5 and 20. Where a common grantor binds his remaining land by a writing a subsequent purchaser from the common grantor acquires title subject to the restrictions in the deed to the earlier purchaser. Guillette v. Daly Dry Wall, Inc., 367 Mass. 355, 358 (1975). Well-Built contends that the 1990 separation agreement and the August 5, 1999 deed to Richard expresses the intent to impose a common scheme of development on all the land in the original 1988 Liberty Tree plan. While this may be true, any common scheme of restrictions applicable to Lots 5 and 20 were to be imposed by the common grantors, here Richard and Barbara. Well-Built’s declaration of covenants do not constitute common scheme restric *269 tions applicable to Lots 5 and 20 because the declaration applies only to the Woods plan (which does not contain Lots 5 and 20) and were imposed by Well-Built as common grantor of the Woods plan.
Well-Built contends that the “right to impose restrictions” against Lots 5 and 20 is contained in a covenant in the deed to Richard which runs with the land conveyed from Richard and Barbara to Barbara, and then to Well-Built. In order for a covenant to run with the land, the following requirements must be satisfied.
1) The covenant must be in writing and must be signed by the covenantor;
2) the parties must intend that the right to impose restrictions run with the land;
3) the parties must be in privity of estate; and
4) both the benefit and the burden of the covenant must touch and concern the affected parcels of land.
Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 90 (1979).
In the August 5, 1999 deed to Richard and in the 1990 separation agreement, Richard covenanted that as grantee he will accept for himself and his successors restrictions and obligations imposed upon Lots 5 and 20 at such time as said restrictions are imposed upon all of the other lots of the “subdivision.” The August 5, 1999 deed transferring the rest of the Liberty Tree plan to Barbara conveyed “all appurtenant rights of record . . . those rights and easements reserved in the deed to Richard A. Shuster of [August 5, 1999].” Nothing in either deed expresses a right or who would impose such restrictions. Well-Built states that by necessary implication Barbara had the right to impose restrictions and that, as successor to Barbara, Well-Built had and exercised the right to impose restrictions.
Well-Built suggests that this court should apply the interpretation of contract rule expressed in Lipton Professional Soccer, Inc. v. Bay State Harness Horse Racing & Breeding Ass’n. Inc., 8 Mass.App.Ct. 458, 463 (1979), and supply the omitted implication that Richard and Barbara intended that successors in title would impose restrictions, and further that such an implication satisfies the requirement that a covenant must be in writing and signed by the covenantor to run with the land. In Lipton, the Appeals Court held that a restrictive covenant contained in a lease was appurtenant (ran with the land) to the racetrack land and enforceable by successors in title. 8 Mass.App.Ct. at 467. The Appeals Court repeated the rule set forth in Dittemore v. Dickey, 249 Mass. 95, 104-05 (1924), that “if the instrument as a whole produces a conviction that a particular result was fixedly desired although not expressed by formal words, to that defect may be supplied by implication and the underlying intention of the [parties] may be effectuated, provided it is sufficiently declared by the entire instrument.” Lipton, 8 Mass.App.Ct. at 463. A covenant contained in a lease provision which restricts play dates at a stadium in a business transaction is, however, entirely different from land use restrictions.
Any rights to impose restrictions must be construed narrowly, all doubts being resolved in favor of freedom from restriction. Walker v. Gross, 362 Mass. 703, 706 (1972); Stewart v. Alpert, 262 Mass. 34, 36 (1928); Burritt v. Lilly, 40 Mass.App.Ct. 29, 33 (1996). Restrictions on land are disfavored, and “in general are to be construed against the grantor and in favor of freedom of alienation” Ward v. Prudential Ins. Co., 299 Mass. 559, 565 (1938). Personal rights may not be enforced by a successor to the grantor. Cogliano v. Lyman, 370 Mass. 508, 512 (1976); Patrone v. Falcone, 345 Mass. 659, 663 (1963). The only covenant that is expressed in writing was Richard’s covenant to impose restrictions upon Lots 5 and 20 at such time as restrictions were imposed upon the other lots of the subdivision. The “right .to impose restrictions” which Well-Built suggests it held by implication was not contained in a writing sufficient for a covenant to run with the land. Whitinsville Plaza, 378 Mass, at 90 (covenant must be in writing and signed by the covenantor). Thus, without an expressed covenant running to the grantors’ successors this court finds that because of the indefinite nature of the right to impose future restrictions upon Lots 5 and 20 as contained in the August 5, 1999 deed to Richard, the right to impose restrictions was personal to Richard and Barbara as the grantors of Lots 5 and 20.
In summary, this court finds that the right to impose restrictions upon Lots 5 and 20 was personal to Richard and Barbara. When Barbara conveyed Lots 1 through 15, inclusive, in the Woods plan subdivision to Well-Built, Barbara’s “right to impose” restrictions did not run with the land. The right to impose restrictions against Lots 5 and 20 did not run with the land because the “right,” as contained in the August 5, 1999 deed to Richard, was not expressly given to Barbara’s successors in title. It is interesting to note that when Well-Built created and recorded its first set of restrictions, the declaration did not attempt to impose them on Lots 5 and 20. It was only later, after the parties had failed to resolve other differences that Well-Built “clarified” the declaration of restrictions to include Lots 5 and 20.
For the foregoing reasons, Shuster’s Motion for Summary Judgment is ALLOWED and Well-Built’s Cross Motion is DENIED. Lots 5 and 20 as shown on The Liberty Tree Subdivision plan recorded at the Bristol (South District) Registry of Deeds at Plan Book 121, Page 113, are not burdened by the Declaration of Covenants and Restrictions recorded in Book 4749, Page 135, nor the Clarification of Covenants and Restrictions recorded in Book 5182, Page 340. It is further ORDERED that any rights to impose restric *270 tions on Lots 5 and 20 as described in the deed recorded at Book 4485, Page 213 from Barbara and Richard to Richard, have been released.
Judgments will not enter in either case at this time. As the cross motions for summary judgment were limited to the question of whether Lots 5 and 20 are subject to the declaration of restrictions imposed by Well-Built, several issues raised in the pleadings have yet to be addressed. The court will await further guidance from the parties before taking further action.

 Editor’s Note: Justice Trombly is a justice of the Land Court sitting by designation in this Superior Court matter.

 The Fall River Five Cents Savings Bank, after filing its answer, took no further part in the case and was not represented at the summary judgment hearing.

 All references to the recording of instruments and plans in this case refer to items which have been recorded at the Bristol (South District) Registry of Deeds.

 The deeds by and between Richard and Barbara refer to the lots as being shown on the 1988 Liberty Tree subdivision plan. Well-Built contends this was done because the Woods plan had not yet been endorsed by the Planning Board at the time the deeds were executed.

 It is this letter, together with the response to it, which were the subject of Well-Built’s motion to strike evidence.