GULF OIL CORPORATION & others *vs.* FALL RIVER HOUSING
AUTHORITY & another.

Bristol.    September 21, 1973.—January 15, 1974.

Present:   TAURO, C.J., REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Urban Renewal. Redevelopment of Land. Real Property,* Equitable
restriction, Covenant running with the land, Covenant against competi-
tion. *Equity Pleading and Practice,* Parties.   *Words,* "Incidental or ac-
cessory use," "Common scheme of development," "Touch and con-
cern."

The owner of a gasoline service station approved by a housing authority
for a location in one section of an area affected by a redevelopment plan
was entitled to an injunction barring the owner of land in an adjacent
section from also using its land for a gasoline service station where the
plan provided that a "gasoline service station use" was not permitted in
the second section "if previously approved" for the first section,
though "a small . . . service station" was permitted "as an incidental
or accessory use servicing a primary use" [495-496]; where the plan
restrictions, though not physically uniform, were part of a "common
scheme" allowing the plaintiff to enforce it, even though a covenant by
the defendant to comply with the plan was made to the redevelopment
authority after the authority had conveyed out the plaintiff's land
[496-498]; where the plaintiff's property was an intended beneficiary of
the gasoline service station restriction and that restriction was not a
personal covenant against competition but affected the actual physical
enjoyment of the plaintiff's property so as to "touch and concern" it
[499-500]; and where that restriction was not to be denied enforcement
by injunction under G. L. c. 184, § 30 [500-501].
The owner of a gasoline service station located on land obtained from a
housing authority subject to requirements of a development plan was
not entitled to relief in a suit in equity against the authority to enforce a
restriction which was part of the plan where no covenant of the author-
ity with the plaintiff was made or could be implied, in the absence of an
express written agreement, either from the authority's conveyances to
the plaintiff or from the existence of a common scheme of development.
[501]

BILL IN EQUITY filed in the Superior Court on July 17, 1970.

The suit was heard by *Frank E. Smith,* J.

*Richard C. Levin* for Gulf Oil Corporation & another.

*Antonio R. Luongo, Jr.,* for Fall River Housing Authority.

*Jeffrey S. Entin* for Mount Hope Development Corporation.

REARDON, J. This bill in equity is brought to enforce a Land Assembly and Redevelopment Plan (plan) dealing with land in the city of Fall River (city). The plaintiff Gulf Oil Corporation (Gulf) is the owner of a parcel of land in the area affected by the plan, and alleges that the defendants Fall River Housing Authority (authority) and Mt. Hope Development Corporation (Mt. Hope) are violating a use restriction provided for in the plan.

The matter is here on a statement of agreed facts, a transcript of the evidence and a report of material facts. Thus all questions of law, fact and discretion are open to our decision on review. *Gordon* v. *O'Brien,* 320 Mass. 739, 740 (1947). The evidence necessary to decision is undisputed and largely documentary. We are here in as good a position to decide the issues as the trial judge and may do so without deference to the inferences he may have drawn from the facts and, indeed, without regard to the findings and proceedings below. *Shattuck* v. *Wood Memorial Home, Inc.* 319 Mass. 444, 445 (1946). *Weinstein* v. *Green,* 347 Mass. 580-581 (1964).

The facts are these. In October, 1957, the authority, and the city acting through its city council, approved the plan for "The Pearl Street Redevelopment Project." The plan divided the relevant area of the city into two zones, General Commercial A and General Commercial B, separated by Milliken Boulevard. A 1964 amendment to the plan specifying permitted uses in the two sections included inter alia the following provision: "Hotel or motel use or restaurant, or gasoline service station use shall not be permitted in parcels designated General Commercial (B) if previously approved for a General Commercial (A) parcel. However, a small restaurant, snack bar or service station may be permitted as

an incidental or accessory use serving a primary use such as a retail store.''

Gulf is the owner of property in General Commercial A. Its chain of title relates back to a conveyance from the authority in September, 1963. The original deed and all subsequent deeds of the property provided that the conveyance in each instance was subject to all restrictions and covenants in the ''Contract for Disposition of Land for Private Redevelopment'' between the authority and Gulf's predecessor. That contract contained covenants restricting land uses to those permitted by the plan and provided that such covenants were enforceable by the grantor, grantee, their successors in title and the owners of land or any interest in land anywhere in the ''Project Area'' which was subject to the restrictions of the plan. The plaintiff Edward Souza is the lessee of Gulf on a portion of the ''Project Area.'' The plaintiff Fall River Municipal Employees' Credit Union (credit union) is the owner of land in General Commercial B. It was the direct grantee of the authority, and its contract of purchase and deed contained substantially the same restrictions as those noted with respect to the property of Gulf. Mt. Hope is the owner of a large part of the land in General Commercial B. The contract for sale of land to Mt. Hope provided for restrictions similar to those mentioned, and these restrictions were incorporated by reference into the deed by a correcting deed properly executed, delivered and filed. It is these last restrictive covenants which the plaintiffs seek to enforce.

In May, 1966, the authority issued a certificate of completion and approval to Gulf's predecessor in title approving the use of its land in General Commercial A as a hotel, motel, gasoline service station and/or restaurant. Gulf obtained the necessary licenses and approvals, and a service station operated by the plaintiff Souza opened on that site on or about June 1, 1968. In January, 1970, Mt. Hope was granted a permit by the Fall River ·city council to store gasoline on a parcel of its property in General Commercial B adjacent to the property of the credit union and across

Milliken Boulevard from the service station of Gulf and Souza. A gasoline station was constructed on that site. The plaintiffs' suit alleges that this use was in violation of the quoted provision of the plan in that no gasoline service stations were to be permitted in General Commercial B following approval of gasoline service station use in General Commercial A. Such violation of the plan, it is alleged, would also constitute a violation of the restrictive covenants incorporated by reference in Mt. Hope's deed. The trial judge dismissed the bill with prejudice, and the plaintiffs brought this appeal.

1. The initial question presented is one of interpretation of the plan restrictions, for if the use by the defendants is in conformity with the plan no resolution of further issues is necessary for decision. The defendants contend that the facility constructed fits into the proviso for "a small restaurant, snack bar or service station . . . as an incidental or accessory use serving a primary use such as a retail store" in General Commercial B even if a "gasoline service station" had already been approved for General Commercial A. The use of the property projected by the defendants appears to be that of an ordinary gasoline service station. The defendants argue that, notwithstanding the qualifying adjective "small," the kind of service station permitted in the last sentence of the provision should be interpreted as identical to the use referred to in the prior sentence. They further contend that the gasoline station in question is "an incidental or accessory use serving a primary use such as a retail store" and that the primary use to which the service station is incidental is the planned complex of apartment buildings, office buildings and retail stores in the "Project Area." This interpretation makes every service station use an incidental one. If we adopted the reading urged by the defendants, we could paraphrase the provision as follows: "Service station use may not be permitted in General Commercial B if previously approved for General Commercial A. However, a service station may be permitted." We will not construe an instrument to imply such nonsense when the provisions may

be read together consistently if the last sentence is interpreted to identify some use different in kind from that preceding it. See *Corbin* v. *Healy,* 20 Pick. 514, 515 (1838); *Stop & Shop, Inc.* v. *Ganem,* 347 Mass. 697, 701 (1964). A reasonable construction of the plan indicates that the drafters intended to restrict ordinary service station use to one sector or the other, with exceptions for a particular and limited kind of use. We need not attempt to explicate the terms "small" or "incidental or accessory use" since it is clear that the questioned use before us is in no way different from that customarily associated with service stations in general. In the absence of any evidence that the use has some special characteristics which fit into the exception, we must hold that the use violates the plan and therefore the covenants in the deed to Mt. Hope.

2. The defendants next argue that in any event the covenants are against competition and therefore unenforceable under our holdings in *Norcross* v. *James,* 140 Mass. 188 (1885), and *Shell Oil Co.* v. *Henry Ouellette & Sons Co. Inc.* 352 Mass. 725 (1967). Before reaching that question it is necessary to determine what standing the plaintiffs have to enforce the covenant made by Mt. Hope to the authority.[1] The conveyances by the authority to the plaintiffs preceded that from the authority to Mt. Hope. Ordinarily Mt. Hope's covenants arising from the latter conveyance could not benefit the property of the plaintiffs, the title to which was no longer in the authority. However, the right to enforce the covenant of Mt. Hope can be exercised by the plaintiffs if they are prior grantees from the authority of property which is part of a common scheme of development under the rule discussed in *Snow* v. *Van Dam,* 291 Mass. 477 (1935). If such a scheme exists here, embracing the land of both the plain-

---

[1]There is some confusion in the briefs and arguments of the parties as to precisely what covenant is being relied on here. Were the case to turn on a covenant by the authority to Gulf's predecessor in title there would be a simple question whether the burden and benefit ran with the properties of the original covenantor and covenantee to the instant parties. We can discern nowhere in the record, however, any such covenant by the authority. We are thus forced to resolve the question of the right of the plaintiffs to enforce the covenant between the defendants.

tiffs and Mt. Hope, the plaintiffs may enforce the restriction.

We think such a scheme does exist. The plan was formulated and approved in 1957 before any of the conveyances described. Every purchaser was aware of the existence of that plan and every purchaser was required to covenant to use the property acquired in accordance with that plan. Indeed, such covenants from every purchaser were required by statute. G. L. c. 121, § 26LL, repealed by St. 1969, c. 751, § 2. G. L. c. 121B, § 49, added by St. 1969, c. 751, § 1. The restrictions are identical in that each grantee was required to adhere to the plan. See *Snow* v. *Van Dam, supra,* at 481-483. It was not of course uniform with respect to the particular building or use restrictions which are imposed on individual lots. While the language of some opinions might be construed as mandating such physical uniformity before a common scheme is found, see, e.g., *Sterling Realty Co.* v. *Tredennick,* 319 Mass. 153 (1946), we do not believe the intent or rationale of the rule allowing enforcement by owners restricted by a common scheme supports such a narrow interpretation.

While it is true that the legal theory behind the rule related to a common scheme "is not easy to find," *Snow* v. *Van Dam, supra,* 485; Am. Law of Property, § 9.30 (1952), we think the policy justifications are evident. Every property owner entering on such a planned development has voluntarily joined a system dependent on respect for mutual benefits and obligations which maintain the quality and character of the area in a manner thoroughly understood by prospective and active purchasers. See *Gilbert* v. *Repertory, Inc.* 302 Mass. 105, 107 (1939). To make this system operate, a means of private enforcement is necessary. Since all other landowners in the scheme are injured by a violation, it is sensible and just that each should have the right to demand that the restrictions be complied with. Every property owner, regardless of the order of purchase, has a real and important stake in the maintenance of the plan. See *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378, 383 (1924).

This is so even if the physical restrictions sought to be enforced are not uniform. It has never been held that a common scheme of this type must provide precisely the same uses and building limits on every lot in the planned area. *Bacon* v. *Sandberg,* 179 Mass. 396, 398 (1901). *Sargent* v. *Leonardi,* 223 Mass. 556 (1916). It is sufficient that each property owner understands the nature of the whole plan before purchase and that the plan envisions an orderly and harmonious development for the entire area. The trend of modern planning is to mix various uses and types of building within the same area. See generally the Symposium on Planned Unit Development, 114 U. of Pa. L. Rev. 3 (1965). This does not make the scheme any the less a common scheme, the success of which is dependent on the adherence to it by each property owner. We find such a scheme here, and hold that the plaintiffs, as prior purchasers under restrictions to abide by the plan, have a right to enforce it against other landowners similarly restricted.

3. Other considerations remain for disposition. The restriction is enforceable only if it meets the other requirements of covenants running with the land. The real property of the plaintiffs must be land which the parties to the agreement intended to benefit by the restriction, and the restriction itself must "touch and concern" the plaintiffs' land. Am. Law of Property, § 9.30 (1952). With respect to the first requirement, the intention of the parties as to land benefitted may be inferred "from the terms of the grants, or from the situation and surrounding circumstances." *Lovell* v. *Columbian Natl. Life Ins. Co.* 294 Mass. 473, 477-478 (1936). Both factors support that finding here. The covenant incorporated by reference into the deed from the authority to Mt. Hope states explicitly that it is "for the benefit and in favor of, and enforceable by, . . . the owner of any other land (or of any interest in such land) in the Project Area, which is subject to the land use requirements and restriction of the Urban Renewal Plan." Moreover, the existence of a common scheme of development as has been found above also supports a determination that the benefit of the restric-

tion was intended to be appurtenant to all other restricted land in the scheme. See *Patrone* v. *Falcone,* 345 Mass. 659 (1963).

This brings us to the requirement that the covenant "touch and concern" the land, and the defendants' argument that this requirement is not met here because the covenant is against competition and thus only personal under our holdings in *Norcross* v. *James,* 140 Mass. 188 (1885), *Shade* v. *M. O'Keefe, Inc.* 260 Mass. 180 (1927), and *Shell Oil Co.* v. *Henry Ouellette & Sons Co. Inc.* 352 Mass. 725 (1967). The plaintiffs argue inter alia that if this court determines that these cases are applicable to the current controversy we should consider overruling them. We do not reach this question because we believe the covenant here is distinguishable and is not a covenant against competition in the sense intended in the cited cases. Surely not every restrictive covenant which has some anticompetitive effect is denied enforcement. See *Jenney* v. *Hynes,* 282 Mass. 182, 195 (1933). Whether the covenant is primarily against competition and thus fails to "touch and concern" the land must largely be a question of intention. In *Norcross* v. *James, supra,* the grantor covenanted that he would not operate a stone quarry on his remaining and adjacent land in competition with that on land conveyed. Justice Holmes stated that "[t]he scope of the covenant and the circumstances show that it is not directed to the quiet enjoyment of the dominant land." *Id.* at 192. In *Shade* v. *M. O'Keefe, Inc., supra,* the grantee of land adjacent to the grantor's grocery store covenanted not to compete with it for ninety-nine years. The court found this restriction "simply tends to increase . . . [the benefitted land's] value by excluding a competition." *Id.* at 183. In *Shell Oil Co.* v. *Henry Ouellette & Sons Co. Inc., supra,* the grantor explicitly covenanted not to use his adjacent remaining land for any purpose competitive with the uses of the conveyed land. In each case the plain and practically exclusive reason for the covenant was to eliminate possible competition for the promisee. The case before us is quite different. The restriction was inserted not by an adjacent land-

owner but by the authority as required by statute. It was not intended to enrich any particular landowner by granting him a monopoly but to assure the orderly and mutually beneficial development of the entire area.[2] We think this is evident from the fact that the plan places no limit on the number of service stations in the project, only upon their location. Other service stations are permitted in General Commercial A. The restrictions favor the development of service stations in this area by forbidding such use in General Commercial B once a station has been established in the other sector, and the drafters of the plan no doubt believed this would foster the general betterment of the area. Such a development might contribute to the aesthetics of the Project Area, confine the adverse effects of the gas stations upon the environment or improve the traffic flow. There is no question that Gulf will reap private gain from the elimination of competition by the defendants. But a landowner's motive does not affect his right to enforce a restriction. *Hamlen* v. *Sorkin,* 251 Mass. 143, 153 (1925). In any event, there is no likely competitive benefit to the credit union from a restraint of the defendants' use. We believe the restriction is primarily directed at planning goals which directly affect the actual physical enjoyment of the plaintiffs' property and therefore "touches and concerns" the land and is enforceable.

4. It is finally necessary to consider the restriction in light of the provisions of G. L. c. 184, § 30,[3] in order to determine

---

[2]It may be that an intermediate purpose of the restriction was to grant businessmen in the area a limited freedom from competition in order to assist the prosperity of the development. Since, however, there appears to have been no limit on further service stations within General Commercial A, this seems highly unlikely. Furthermore, it is obvious that the overriding intention of the restriction was the promotion of the public welfare rather than the business success of individual landowners.

[3]"No restriction shall in any proceeding be enforced or declared to be enforceable, whether or not the time for recording a notice or extension under section twenty-seven or twenty-eight has occurred, or such a notice or extension has been recorded, unless it is determined that the restriction is at the time of the proceeding of actual and substantial benefit to a person claiming rights of enforcement. No restriction determined to be of such benefit shall be enforced or declared to be enforceable, except in appropriate cases by award of money damages, if (1) changes in the character of the properties affected or their neighborhood, in available construction materials or techniques, in access, services or facilities, in applicable public controls of land use or construction, or in any other conditions or cir-

if the restriction should be enforced and, if so, whether it should be enforced by other than money damages. For the reasons stated, we think the restriction is of actual and substantial benefit to the plaintiffs. No change of circumstances renders it obsolete. Nor, in light of the continuation of the provision in the plan by the local authorities, can we say that it impedes the reasonable use of the land or would tend to impair the growth of the neighborhood or contribute to blight. Certainly no convincing evidence is before us that the continuation of the Mt. Hope service station is necessary to the success of the redevelopment plan. We would therefore be unwarranted in overturning the judgment of the planners on this point.

The use of the land of Mt. Hope within the "Project Area" is therefore declared in violation of the plan and a breach of its covenant to comply with that plan. The defendant Mt. Hope must be enjoined from using that property for a gasoline service station while the restriction remains in force. With respect to the authority, no relief is proper. The authority did not covenant with the plaintiffs and no covenant can be implied from its conveyances to them or from the existence of a common scheme of development in the absence of an express written agreement. *Houghton* v. *Rizzo,* 361 Mass. 635, 639-640 (1972). Absent such an agreement, the plaintiffs have no rights against the authority. In

---

cumstances, reduce materially the need for the restriction or the likelihood of the restriction accomplishing its original purposes or render it obsolete or inequitable to enforce except by award of money damages, or (2) conduct of persons from time to time entitled to enforce the restriction has rendered it inequitable to enforce except by award of money damages, or (3) in case of a common scheme the land of the person claiming rights of enforcement is for any reason no longer subject to the restriction or the parcel against which rights of enforcement are claimed is not in a group of parcels still subject to the restriction and appropriate for accomplishment of its purposes, or (4) continuation of the restriction on the parcel against which enforcement is claimed or on parcels remaining in a common scheme with it or subject to like restrictions would impede reasonable use of land for purposes for which it is most suitable, and would tend to impair the growth of the neighborhood or municipality in a manner inconsistent with the public interest or to contribute to deterioration of properties or to result in decadent or substandard areas or blighted open areas, or (5) enforcement, except by award of money damages, is for any other reason inequitable or not in the public interest.

"Nothing herein shall prevent a court from issuing a temporary injunction or restraining order pending determination of enforceability of a restriction."

so far as the final decree applies to the authority, it is affirmed. As it affects Mt. Hope, the decree is reversed and a new decree is to be entered for the plaintiffs.

*So ordered.*