JOSEPH D. COGLIANO & others[1] *vs.*
ELIZABETH C. LYMAN & others.[2]

Norfolk.   May 6, 1976. — June 15, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Real Property,* Restrictions.

A covenant restricting the uses of certain land to those permitted in a
town's zoning by-law as in effect on the date of a conveyance was
enforceable where the restriction was of actual and substantial bene-
fit to the owners of abutting land, one of whom was the grantor who
imposed the restriction, and where there was no reason rendering
enforcement inequitable or not in the public interest within the
meaning of G. L. c. 184, § 30. [512-516]

BILL IN EQUITY filed in the Land Court on June 6, 1972.
The suit was heard by *Randall,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Leslie H. Rudnick* for Joseph D. Cogliano & others.
*William Shields, III,* for Elizabeth C. Lyman.
*Margaret Wittenborg* for Paul F. Nocka & another.


KAPLAN, J.   This was a suit in the Land Court com-
menced pursuant to G. L. c. 240, §§ 10A-10C, by the peti-
tioners, owners of land burdened by a restrictive covenant,

---

[1] Eleanor E. Cogliano, Frank C. Cogliano, Grace J. Cogliano; also
Joseph D. Cogliano, Frank C. Cogliano, and Rose Cogliano, as they
are trustees of the Royall Trust.

[2] Paul F. Nocka and Violet Nocka.

to be relieved of the restriction in accordance with the provisions of G. L. c. 184, § 30. Named as respondents were the owners of certain abutting land, one of whom was the grantor who imposed the restriction and from whom the petitioners derive their titles. After conducting a trial, without a jury, on pleadings which need not be particularly described,[3] and after taking a view of the locus, a judge of the Land Court entered a final decree dismissing the petition. The petitioners filed their appeal in the Appeals Court, whence it was transferred to this court under G. L. c. 211A, § 10 (A). We find no reason to disturb the result.

We are assisted by the careful findings, rulings, and order for decree by the trial judge, of which the facts found were adopted by the judge as his report of material facts. The testimony and exhibits at trial, available to us in a transcript, amply support the judge's findings. We do no more than restate them as far as needed to consider the appeal.

In 1956 the respondent Elizabeth C. Lyman was the owner of the land, now southerly of Route 128, marked with her name on the appended "Decision Plan," as well as the land opposite, now northerly of Route 128, comprising the parcels numbered 2, 3, 4, and 5. The entire property, lying in Canton, Massachusetts, was zoned as Single Residence District A. Route 128 was being relocated at the time to pass between the two portions of the Lyman property. This was the occasion or reason for the conveyance to be described.

In January, 1956, Mrs. Lyman conveyed the land comprising the parcels mentioned, lying northerly of Route 128, some twelve acres in all, to the brothers Joseph C. Cogliano and Frank C. Cogliano, as tenants in common. The deed, signed by the parties, contained the following restriction: "Each of the Grantees covenants for himself and his heirs, executors, administrators, successors and assigns that for thirty (30) years from the date of re-

---

[3] The Nockas filed a separate answer. See text to n.9 below.

cording of this deed the premises herein conveyed shall be used only in accordance with the Zoning By-Laws of the Town of Canton presently in force and applicable to said premises, regardless of any changes in said By-Laws which may hereafter be made." [4] The deed was delivered on the express understanding, contained in a letter of counsel, "[t]hat the Coglianos are buying this property for the purpose of using it as a nursery and a site for not more than two houses, and with no present intention of using it for any other purpose," and the further express understanding that the Coglianos would sell an acre at the corner of Green Street and old Route 128 (parcel 5) to Paul F. Nocka and Violet Nocka subject to the same restriction. The Nockas were already owners of parcel 1 on which stood the old colonial house called the General Crane House.

Mrs. Lyman's purpose in the transaction, as found by the judge below, was "to preserve the residential character of the neighborhood and to protect the General Crane House occupied by the respondents Nockas."

As had been agreed, the brothers Joseph and Frank conveyed parcel 5 to the Nockas in a deed signed by the parties.[5] They conveyed parcel 3 (30,000 square feet) to Frank C. and Grace J. Cogliano, husband and wife, and, later, parcel 2 (55,240 square feet) to Joseph D. and Eleanor E. Cogliano, husband and wife, and a residence was built on each of these parcels. The brothers deeded the remainder of the land conveyed to them by Mrs. Lyman, that is, parcel 4, to themselves and Rose Cogliano as trustees of the Royall Trust. The Coglianos maintain a tree and plant nursery on parcel 4 and "have prospered

---

[4] The covenant continued: "The foregoing covenant shall run with the land herein conveyed, and in case of any breach thereof the Grantors and their heirs, executors, administrators, successors and assigns shall be entitled to an injunction compelling compliance therewith, in addition to all other remedies at law or in equity."

[5] The Nockas granted Joseph and Frank Cogliano an option to rebuy parcel 5 in certain events, and also undertook not to build on that parcel without the Coglianos' approval.

in the nursery business at its location," which is a favorable one for the purpose, and have bought other land to supplement the operation.

Over the years to the time of trial the Lyman, Cogliano, and Nocka properties have remained in the condition contemplated by the 1956 transaction. External developments affecting the locus have been as follows. The traffic on Route 128 has increased, reaching a level of about 93,180 vehicles a day.[6] Some industrial building has occurred in the area easterly of the Coglianos and the Nockas and northerly of Route 128, zoned as a Limited Industrial District. First, in 1957, Instron Corporation constructed a 55,000 square foot building, near the Route 128-Route 138 interchange, for the manufacture of electronic components; this is not visible from the Coglianos' or the Nockas' property. Second, in 1969 Boston Envelope Company built a 163,000 square foot building with parking facilities for 300 cars adjacent to the nursery; the building is visible from the Coglianos' property and parcel 5, but not from the Nockas' house which is shielded by a hill rising between it and the building.[7] Third, around the time of trial in 1973 Boston Mutual Life Insurance Company was building a four story, 130,000 square foot building in the area between the other two industrial buildings. Apparently this would be visible as just indicated for the Boston Envelope building.[8] The last development to be mentioned

---

[6] Interstate Route 95 has come in, intersecting Route 128.

[7] The parties seemed agreed that the Boston Envelope building is aesthetically pleasing (and certainly an improvement over the gravel pit that was previously at the location).

The Canton building inspector testified that the board of appeals, in passing on applications to build in the Limited Industrial District, paid attention to the compatibility of the industrial projects to nearby residential uses.

[8] The petitioners made some point of the fact that Mrs. Lyman had not appeared to oppose building permits for any of the industrial constructions, but on the whole record we do not regard this as important.

The respondent Paul Nocka, now a retired architect, had made some suggestions for the protection of his property to the Boston Envelope people, which they adopted.

is that the area comprising the five parcels has been zoned, more restrictively than before, as Single Residence AA: this calls for a minimum area of 45,000 square feet with 200 feet lot width, as compared with 30,000 square feet and 150 feet, respectively, for the A classification. A nursery is permitted in either classification.

The judge ruled on familiar principles, which are not challenged, that Mrs. Lyman as grantor was a proper party to enforce the restriction against those who took from the Cogliano brothers, but that the Nockas were not so positioned because there was no "common scheme." [9] The latter ruling we do not review, as no appeal or argument on this point is before us. Reaching the merits, the judge applied the several criteria of G. L. c. 184, § 30, and concluded that adequate reason had not been shown why the restriction should give way.

The case taken as a whole presented a not unfamiliar problem. Had the neighborhood deteriorated or changed its character to such an extent, from the time the restriction was laid on to the time of trial, that enforcing the restriction according to its terms would be merely quixotic — failing to serve the grantor's original purpose and impeding present desirable and feasible uses? Examples of this sort are pictured in *McArthur* v. *Hood Rubber Co.,* 221 Mass. 372 (1915), and *Jackson* v. *Stevenson,* 156 Mass. 496 (1892); and see the discussion in *Blakeley* v. *Gorin,* 365 Mass. 590, 603-607 (1974) (under G. L. c. 184, § 30). Or was the neighborhood still maintaining its essential character, although against some odds, with the restriction serving, as it was intended to serve, to reduce those odds or prevent their getting longer? See *Canty* v. *Donovan,* 361 Mass. 879 (1972) (under G. L. c. 184, § 30);

---

[9] As to "common scheme," see *Snow* v. *Van Dam,* 291 Mass. 477 (1935). See also *Canty* v. *Donovan,* 361 Mass. 879 (1972); *Donoghue* v. *Prynnwood Corp.,* 356 Mass. 703, 706-707 (1970); *Rahilly* v. *Addison,* 350 Mass. 660, 663-664 (1966); *Allen* v. *Massachusetts Bonding & Ins. Co.,* 248 Mass. 378, 382-385 (1924); *Jackson* v. *Stevenson,* 156 Mass. 496, 501-502 (1892).

*Walker* v. *Sanderson,* 348 Mass. 409 (1965) (same);[10]
*Allen* v. *Massachusetts Bonding & Ins. Co.,* 248 Mass. 378
(1924); *Harrod* v. *Rigelhaupt,* 1 Mass. App. Ct. 376 (1973)
(under G. L. c. 184, § 30). Cf. *Maider* v. *Dover,* 1 Mass.
App. Ct. 683 (1974). We agree that the latter formulation
more nearly fits the situation at bar. Particularly instruc-
tive in this regard was the fact that the zoning limitations
on the area of the five parcels had not been slackened but
tightened. The judge found, incidentally, that (apart from
the deed restriction) "the possibility of the Coglianos ob-
taining a variance is too remote and speculative to be given
any serious consideration." [11]

The general appreciation of the facts helps to answer the
questions calling for responses under G. L. c. 184, § 30 (the
pertinent text is reproduced in the margin).[12] In the light

[10] Although the specific present facts are unique and no prior de-
cision is exact authority, the plaintiffs who failed in the *Walker* case
might be thought to have had a stronger case than the petitioners here,
as there had been a definite deterioration in the character of the neigh-
borhood and the pertinent zoning classification had been changed down-
ward. See the later litigation, *Walker* v. *Gross,* 362 Mass. 703 (1972).

[11] At trial there was evidence that by reason of health and age the
Coglianos were considering leaving the nursery business; they were not
considering selling the nursery as such; there was a market for nurs-
eries. The Coglianos might enhance their position as prospective sell-
ers of their land if it were freed of the restriction and a variance or
change in the zoning classification could be obtained.

[12] Section 30, inserted by St. 1961, c. 448, §1, provides in part: "No
restriction shall in any proceeding be enforced or declared to be en-
forceable, whether or not the time for recording a notice or extension
under section twenty-seven or twenty-eight has occurred, or such a
notice or extension has been recorded, unless it is determined that the
restriction is at the time of the proceeding of actual and substantial
benefit to a person claiming rights of enforcement. No restriction de-
termined to be of such benefit shall be enforced or declared to be en-
forceable, except in appropriate cases by award of money damages, if
(1) changes in the character of the properties affected or their neigh-
borhood, in available construction materials or techniques, in access,
services or facilities, in applicable public controls of land use or con-
struction, or in any other conditions or circumstances, reduce materi-
ally the need for the restriction or the likelihood of the restriction
accomplishing its original purposes or render it obsolete or inequitable
to enforce except by award of money damages, or (2) conduct of per-
sons from time to time entitled to enforce the restriction has rendered

of Mrs. Lyman's purpose in imposing the restriction, there was no error in the conclusion that at time of trial the restriction was of "actual and substantial benefit" to her.[13] Even where such benefit exists, § 30 would deny specific enforcement of a restriction if any one of five listed conditions exists. Condition (1) did not obtain, as the changes that have occurred did not reduce materially the need for the restriction or the likelihood of its accomplishing its original purpose. As the judge remarked: "There is more need for this restriction now than when it was imposed." As to condition (2), there was no conduct of Mrs. Lyman making specific enforcement of the restriction inequitable (see n.8). Condition (3) was not applicable. With regard to condition (4), the area was suitable for a nursery which indeed contributed to maintaining the residential character of the place; and continuation of the restriction was not calculated to impair the growth of the neighborhood in a manner inconsistent with the public interest: here witness the rezoning from A to AA. There was no "other reason" rendering enforcement inequitable or not in the public interest (condition [5]). This case had the unusual feature that it was the original grantor who confronted

it inequitable to enforce except by award of money damages, or (3) in case of a common scheme the land of the person claiming rights of enforcement is for any reason no longer subject to the restriction or the parcel against which rights of enforcement are claimed is not in a group of parcels still subject to the restriction and appropriate for accomplishment of its purposes, or (4) continuation of the restriction on the parcel against which enforcement is claimed or on parcels remaining in a common scheme with it or subject to like restrictions would impede reasonable use of land for purposes for which it is most suitable, and would tend to impair the growth of the neighborhood or municipality in a manner inconsistent with the public interest or to contribute to deterioration of properties or to result in decadent or substandard areas or blighted open areas, or (5) enforcement, except by award of money damages, is for any other reason inequitable or not in the public interest."

[13] It may be noted that the Coglianos' houses and nursery were visible from certain points on the Lyman property, although it was questionable whether they were visible from the Lyman house. The Lyman house was 2,000 feet from the nearest Cogliano house.

The "benefit" of the restriction to the Nockas was plain and it was part of Mrs. Lyman's purpose to protect them.

Cogliano *v.* Lyman.

LEGEND

Single Residence Districts = AA, A, B, and C

Limited Industrial Districts = L I

DECISION PLAN
LAND  IN  CANTON

Route 128  Area,  beteen  Routes  138  and  I-95
Scale 1000  feet to an  inch
December 6, 1973

the original grantees (although they held under convey-
ances following the original conveyance). By the decree
under review the Coglianos were asked to do no more than
live up to covenants they voluntarily undertook and which
figured to reduce the price they paid for the land. On
this land they were living and doing a profitable business.
There was no stringency existing or in immediate prospect
that would make continuance of the current restriction
unfair to them. And there was a public interest in keeping
the locus residential even though some industrial uses
were allowed nearby.

*Decree affirmed.*