JACOB M. ATWOOD *vs.* SAMUEL WALTER & another.[1]

No. 97-P-1841.

Barnstable. March 18, 1999. - August 3, 1999.

Present: WARNER, C.J., SMITH, & GILLERMAN, JJ.

*Real Property,* Restrictions. *Statute,* Construction. *Injunction.*

A restrictive covenant regarding exterior structural alterations to buildings in a
    subdivision was valid and enforceable against the owner of a building, and
    neither G. L. c. 184, § 27, nor G. L. c. 184, § 30, was applicable in the
    circumstances to preclude enforcement of the restrictions. [511-515]
Where a developer, for whose benefit a restriction on the nature of building
    materials in his residential subdivision was enforceable, had granted
    himself a waiver from the restrictive requirement of a wood shingle roof,
    the developer was entitled to injunctive relief for another subdivision
    resident's violation of the restriction only on the condition that he first cor-
    rect his own building's nonconformity with his own restriction. [515-518]

CIVIL ACTION commenced in the Superior Court Department on
September 29, 1994.

The case was heard by *Elizabeth B. Donovan,* J.

*Thomas F. Patch* for the defendants.

*Matthew W. Perkins* for the plaintiff.

GILLERMAN, J. The plaintiff brought this action in Superior
Court to compel the defendants, Samuel and Katherine Walter,
to remove the asphalt shingle roof from their home and to
replace it with a wood shingle roof. The defendants' asphalt
roof allegedly was installed in violation of certain restrictions
contained in an instrument filed by the plaintiff with the Barnst-
able County Registry of Deeds in 1976. After a bench trial, the
trial judge found for the plaintiff, and the defendants appealed
from the final judgment.[2]

---

[1]Katherine Walter.

[2]The original judgment ordered the defendants to comply with the restric-
tions. The plaintiff subsequently filed a motion to amend the judgment,

The defendants argue that the judgment requiring them to remove and replace their roof should be reversed for a variety of reasons, each of which is discussed below.

We take the facts from the judge's memorandum of decision, from documents admitted in evidence, and certain undisputed facts. In the mid-1970's, the plaintiff purchased a sixty-acre parcel of land in Sandwich to be developed under the name "Jacob's Farm Village" (village). His plan was to create a village of eighteenth century style houses. To establish and maintain uniformity throughout the parcel, he selected a number of restrictive covenants, which he set forth in a document entitled "Declaration of Covenants, Restrictions and Reservations For Jacob M. Atwood, East Sandwich, Barnstable County, Massachusetts, Land Court Plan #13895C and #13895D" (restrictions). The document was duly filed with the Barnstable County Registry of Deeds in 1976.

Article 3.1 of the restrictions provides that "[t]he rights, restrictions and reservations set forth in this Article III shall be enforceable by the Developer [i.e., the plaintiff]."[3] Article 3.2 of the restrictions provides that ". . . no alteration to the exterior of any structure shall be made unless complete plans and specifications have been submitted to and approved by the Developer." However, article 3.2 also provides that if no suit shall have been commenced by the developer within three months of the completion of any unapproved "alteration to the exterior of any structure," the developer's approval shall be deemed to have been granted. In addition, article 6.2 provides that "[t]he Developer may waive or amend any of the covenants, restrictions, and agreements or charges herein contained but such waiver or amendment in any instance shall not constitute a waiver of the right to enforce any of such covenants, restrictions, agreements or charges thereafter."

Consistent with the restrictions, the plaintiff also created a specification sheet that he distributed to all potential buyers and builders. The specification sheet provided that the deed to the buyer will include a covenant that the developer reserves "the

requesting that the court specifically order the defendants to replace their asphalt shingle roof with a wood shingle roof. This motion was allowed, and a new judgment was entered on February 6, 1996.

[3]Article II of the restrictions, which contains the more customary restrictions regarding residential developments, is enforceable by the owner of any lot in the subdivision, including the plaintiff.

right to approve in advance of construction, home designs . . . ." The specification sheet also provided that "[h]ouses must have wooden roofs made with shingles or shakes." Thus, the defendants' house was originally constructed with a wood shingle roof which could not be altered under article 3.2 without the approval of the plaintiff as the developer.

The plaintiff's corporation, Jacob's Farm Village, Inc., owns lot 12, which is located at 2 Karla Lane. The plaintiff constructed and maintains a house on lot 12, which is called the General Brattle House (Brattle House).[4] The Brattle House is located in a heavily wooded area. The plaintiff also continues to own fourteen or fifteen lots in the subdivision.

Over the years, the plaintiff experienced numerous problems with the Brattle House. An excessive amount of moisture caused the paint to peel, and the house was required to be repainted virtually every other year since 1982. The wooden roof rotted, as did other parts of the house, such as the window sills, corner boards, clapboards, and fascia boards.

The underlying difficulty, according to the plaintiff, was that when the plaintiff's wife "was siting the foundation to this house she was very ill, and she goofed up a bit. . . . The foundation ended up being tucked back in a hole so you couldn't put a house on top of it. So to solve that, we poured another full foundation at the back of the house so there was two foundation heights tall, so it was literally [e]mbedded in the hillside." The house is approximately twenty to thirty feet below street level.

In an effort to mitigate these problems, the plaintiff consulted with a builder and an architect. He was advised that "it would be silly to put another wood roof on there, it would rot away on very short order . . . ." The construction of the house started in 1979 and the roof was replaced "in the mid to late 80's . . . ." As a result, the plaintiff implicitly waived the restrictions for his own benefit and installed an asphalt shingle roof on the house. He also removed fifty to sixty trees from lot 12 in an attempt to alleviate the moisture and rotting problems.

The defendants purchased lot 49, which is located at 6 Tarragon Drive, in 1987. The plaintiff had approved the plans that were submitted by the builder, and a wood shingle roof had been installed on the house. On December 12, 1991, the

---

[4]The plaintiff makes no claim that his house was free of the restrictions.

defendants wrote to the plaintiff requesting permission to replace the wood shingles with asphalt, three dimensional, architectural shingles. The defendants wrote that they had noticed that the plaintiff had replaced his roof with asphalt shingles, and that the defendants' wood shingle roof "is deteriorating after only 6 years." They also wrote that they needed to install an asphalt shingle roof on their house because their house "is in a hollow, surrounded by trees and not conducive to the use of wooden cedar roof shingles." The plaintiff replied by letter dated January 28, 1992. He wrote, "I have carefully reviewed your request in your December 12, 1991 letter to me and I am afraid that your requests are all made with 'tongue in cheek.' The circumstances that permitted an exception on Lot 12 certainly do not exist at your home, and hopefully we can all spend more time addressing our concerns at Jacob's Farm without being facetious." On May 21, 1992, defendants' counsel repeated the request for permission to install asphalt shingles, and again permission was denied.

Notwithstanding the refusal of permission from the plaintiff, the defendants proceeded to install an asphalt shingle roof on their house beginning on or about September 23, 1994. The plaintiff brought suit against the defendants on September 29, 1994, to compel them to comply with the restrictions.[5] After a bench trial, the defendants were ordered to replace their asphalt shingle roof with a wood shingle roof.

1. *Enforcement of the restriction pursuant to G. L. c. 184, § 27.* The restriction sought to be enforced is contained in article 3.2 of the Declaration of Covenants, Restrictions and Reservations: "no alteration to the exterior of any structure shall be made unless complete plans and specifications have been submitted to and approved by the Developer." The defendants challenge the plaintiff's application of this restriction to their choice of roofing material. They argue that the judgment issued against them should be reversed because plaintiff failed to prove that he is entitled to enforce the restrictions pursuant to G. L. c. 184, § 27. Section 27 provides in pertinent part:

---

[5]The plaintiff was denied a preliminary injunction against further construction by the defendants on October 20, 1994.

"No restriction imposed after December thirty-first, nineteen hundred and sixty-one[6] shall be enforceable:—

> (a) unless the person seeking enforcement (1) is a party to the instrument imposing the restriction and it is *stated to be for his benefit* or is entitled to such benefit as a successor to such party . . . ." (Emphasis added.)

The defendants argue that the plain language of G. L. c. 184, § 27(a), requires any person seeking to impose a restriction on real property to state explicitly that the restriction is for his or her "benefit." Since the instrument created by the plaintiff in this case does not actually contain the word "benefit," the defendants argue that they cannot be ordered to comply with the restrictions set forth therein. We do not construe the statute so strictly; to do so would defeat the legislative intent of limiting the enforceability of restrictive convenants to the party who is the intended beneficiary of the covenants. No particular formula of words is required by the statute. See *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 98 (1979).

Here, the instrument in which the restrictions are set forth is entitled "Declaration of Covenants, Restrictions and Reservations *For Jacob M. Atwood*, East Sandwich, Barnstable County, Massachusetts, Land Court Plan #13895C and #13895D" (emphasis added). Article 3.1 of the restrictions provides that the article 3 restrictions "shall be enforceable by the Developer [i.e., Jacob M. Atwood]," and not by any lot owner, as is the case with violations of article 2 restrictions.

In these circumstances, the plaintiff comes within the requirements of G. L. c. 184, § 27(a)(1).

*2. Enforcement of the restriction pursuant to G. L. c. 184, § 30.* The defendants also argue that the restriction should not be enforced because the evidence does not support the conclusion that the restriction provides an actual and substantial benefit to the plaintiff. This contention is based on G. L. c. 184, § 30, which states in part:

> "No restriction shall in any proceeding be enforced or declared to be enforceable . . . unless it is

---

[6]The restriction at issue was imposed in 1976 and thus is governed by § 27.

determined that the restriction is at the time of the proceeding of *actual and substantial benefit* to a person claiming rights of enforcement" (emphasis added).[7]

We must accept the trial judge's findings of fact unless they are clearly erroneous. Here, the trial judge found that the plaintiff was actually and substantially benefited by the restriction at the time of trial. The judge found that "[t]he purpose of the declaration in this case is to create and preserve the aesthetic qualities and values of the Jacob's Farm Village which benefit both the plaintiff and all other homeowners in the subdivision . . . . The restrictions embodied in the declaration are of actual and substantial benefit to the plaintiff by ensuring that the quality and unique character of Jacob's Farm Village is maintained." After reviewing the record, we cannot say that this finding of fact is clearly erroneous. Cf. *Gulf Oil Corp.* v. *Fall River Hous. Authy.*, 364 Mass. 492, 499-500 (1974) (restriction intended "to assure the orderly and mutually beneficial development of [an] entire area" was of actual and substantial benefit to the plaintiffs); *Garland* v. *Rosenshein*, 420 Mass. 319, 321 (1995) ("[t]o be 'actual,' the benefit must come from the existence and enforceability of the restriction").

General Laws c. 184, § 30, further provides that even where an actual and substantial benefit is found to exist, a restriction shall not be enforced or declared to be.enforceable if:

> "changes in the character of the properties affected or their neighborhood, in available construction materials or techniques, in access, services or facilities, in applicable public controls of land use or construction, or in any other conditions or circumstances, reduce materially the need for the restriction or the likelihood of the restriction accomplishing its original purposes or render it obsolete or inequitable to enforce except by award of money damages. . . ."

[7]General Laws c. 184, § 30, also provides that "[t]here shall be a presumption that no restriction shall be of such actual and substantial benefit except in cases of gifts or devises for public, charitable or religious purposes, if any part of the subject land lies within a city or town having a population greater than one hundred thousand persons . . . ." The trial judge found that the population of the town of Sandwich is less than one hundred thousand persons and that the presumption therefore does not apply. We agree with the trial judge's finding.

The trial judge found "no credible evidence of changes in the character of Jacob's Farm Village which would obviate the need to have the plaintiff approve any proposed changes to the exterior of the homes or reduce the likelihood that such approval will accomplish its purpose." She found that because the development of the village is not yet complete, the plaintiff's approval of changes to the homes continues to be necessary to achieve the unique characteristics of the subdivision. These findings, too, are not clearly erroneous.[8]

The defendants also argue that enforcement of the restriction is prohibited by another provision of G. L. c. 184, § 30, which states that no restriction determined to be of actual and substantial benefit·shall be enforced or declared to be enforceable if:

> "in case of a common scheme the land of the person claiming rights of enforcement is for any reason no longer subject to the restriction or the parcel against which rights of enforcement are claimed is not in a group of parcels still subject to the restriction and appropriate for accomplishment of its purposes
> . . . ."[9]

The defendants claim that because the plaintiff has retained the right to enforce as well as waive the restrictions, none of the plaintiff's land "is *effectively* subject to the plan approval restriction (nor any other restriction)" (emphasis added). This argument has no merit for the reasons described below regarding the appropriate remedy in this case.

General Laws c. 184, § 30, also provides that no restriction determined to be of actual and substantial benefit shall be enforced or declared to be enforceable if:

> "continuation of the restriction on the parcel against which enforcement is claimed or on parcels remaining in a common scheme with it or subject to like restrictions would impede reasonable use of land for

---

[8]The judge refused to credit the testimony of the defendants' expert. Her reason for doing so was entirely justified, and there was no error.

[9]The trial judge did not address this portion of G. L. c. 184, § 30, in her memorandum of decision, although she did find that a common scheme of development exists with respect to the subdivision pursuant to the factors set forth in *Snow* v. *Van Dam*, 291 Mass. 477, 481-486 (1935).

purposes for which it is most suitable, *and* would tend to impair the growth of the neighborhood or municipality in a manner inconsistent with the public interest or to contribute to deterioration of properties or to result in decadent or substandard areas or blighted open areas . . ." (emphasis added).

The defendants argue that the installation of a wood shingle roof would impede the reasonable use of their land because a wood shingle roof is more expensive to install than an asphalt shingle roof. The trial judge found that "[e]xpense alone does not impede the reasonable use of land." The judge was not clearly in error.

In conclusion, we find that neither G. L. c. 184, § 27, nor G. L. c. 184, § 30, precludes the enforcement of the restrictions in this case. Thus, the restriction found in article 3.2, which provides that "no alteration to the exterior of any structure shall be made unless complete plans and specifications have been submitted to and approved by the Developer," is valid and enforceable by the plaintiff as applied to the defendants' choice of roofing material.

3. *The plaintiff's remedy.* Although we have determined that the restriction is enforceable by the plaintiff, there remains the question whether he is entitled to injunctive relief. The defendants claim that the trial judge improperly ordered them to remove the asphalt shingle roof from their house and replace it with a wood shingle roof. They argue that pursuant to G. L. c. 184, § 30, the most the plaintiff was entitled to receive was monetary damages.

General Laws c. 184, § 30, provides in part that no restriction determined to be of actual and substantial benefit shall be enforced or declared to be enforceable, except in appropriate cases, by the award of money damages unless the "conduct of persons from time to time entitled to enforce the restriction has rendered it inequitable to enforce except by award of money damages," or, unless enforcement "is for any other reason inequitable or not in the public interest."

The defendants argue that the conduct of the plaintiff bars him from receiving injunctive relief in this case. They claim that the plaintiff should not be permitted to exempt himself from the restrictions while forcing other homeowners in the development to comply with them at the same time. They submit that the plaintiff's installation of an asphalt shingle roof on the

Brattle House and his subsequent refusal to approve the installation of a similar roof on their home precludes him from obtaining any relief other than monetary damages. The trial judge found that the plaintiff's reasons for denying the defendants' request to install an asphalt shingle roof were neither arbitrary nor capricious. We disagree.

General Laws c. 184, § 30, is consistent with prevailing law. Courts will refuse to enjoin the violation of a restriction, which the plaintiff has previously violated, by invoking the equitable doctrine of "unclean hands," see 9 Powell, Real Property § 60.09, at 60-130; § 60.10[1], at 60-136 (1999), or "breach of corresponding promise." See Restatement of Property § 560 (1944). Decisional law in Massachusetts follows this rule. See *Loud* v. *Pendergast*, 206 Mass. 122, 124 (1910) ("Where a plaintiff has violated the very restriction he seeks to enforce to substantially the same extent and in the same general way as has the defendant, and there is no material difference in kind or degree between them, a court of equity will not ordinarily interfere"); *Balcolm* v. *Normile*, 255 Mass. 186, 188 (1926) (equitable relief denied where plaintiff's conduct "of the same character as the alleged breach . . . by the defendant"). "If the plaintiff's violation is insignificant and the defendant's violation is substantial, courts will grant injunctive relief. If, however, the plaintiff's breach is substantial, even though not as pronounced as the defendant's, injunctive relief will be denied." 9 Powell, Real Property § 60.10[1], at 60-136 — 60-137.

The Restatement of Property addresses this issue in § 560, entitled Breach of Corresponding Promise:

> "The continuing violation of the obligation arising out of a promise respecting the use of land by one who is entitled to enforce a corresponding promise against another disables the one so violating the promise from securing injunctive relief against substantially like violations of the corresponding promise."

In this case, the "corresponding promises," as defined in comment b[10] of § 560, are the promises that were made by both the plaintiff and the defendants to install wood shingle roofs on

---

[10]Comment b defines "corresponding promises" as "mutual promises calling for the performance of substantially like acts in pursuit of a common

their houses. The defendants' violation of the corresponding promise is "substantially like" the plaintiff's violation, as the defendants constructed their roof with the same type of material utilized by the plaintiff on the Brattle House, and for substantially the same reasons.

Applying c. 184, § 30, and other authorities cited above, we conclude that the plaintiff is not entitled to injunctive relief. The plaintiff's difficulties, as the plaintiff admitted, were of his own doing: the plaintiff and his wife had inappropriately sited their house in a wooded hollow twenty to thirty feet below street level. The consequence was that the plaintiff would have to replace a wood shingle roof every ten years or so, as he had done in the "mid or late 80's." This was only about one-half the expected life of a wood shingle roof.[11] To extricate himself from the situation he had created, the plaintiff proceeded to install an asphalt roof on his house, the sole purpose of which was to save the plaintiff expenses.

The defendants are equally at fault. Confronted with poor workmanship by the builder from whom they purchased the house, coupled with the fact that the house was sited in a hollow surrounded by trees, they installed an asphalt roof, without the necessary permission, solely to save expenses.

Both parties are bound by the restrictions each willingly and knowingly accepted, see note 4, *supra*, and there is nothing in the restrictions, explicitly or implicitly, that provides relief by waiver or otherwise simply on the ground that there is an unwanted cost of complying with those restrictions. That was the risk both parties assumed by accepting the restrictions. The unchallenged evidence at the trial makes it clear that the plaintiff's violations of the restrictions are fully equal to the defendants' violations. Both parties should be held to the bargain they made. The case is similar to *Tehan* v. *Security Natl. Bank*, 340 Mass. 176, 182-185 (1959) (plaintiff required to remove their own encroachment of the easement "as a condition

purpose. Illustrations of such promises are promises by each of the owners of adjacent tracts of land to observe a uniform building line, *to build only certain types of building*, or to refrain from carrying on upon the land of the promisor certain kinds of occupation." (Emphasis added).

[11]The plaintiff testified that he began the construction of his house in 1979. Dean Fraser, the defendant's roofing contractor, testified that depending upon the method of installation, a wood shingle roof should last fifteen to twenty-five years.

precedent to ending the [defendant's] similar encroachment").

Accordingly, the amended judgment is vacated and the case is remanded to the Superior Court. At the election of the plaintiff, and upon his application to the Superior Court within ten days of the date of the rescript, the defendants may be ordered to remove their asphalt roof and to install a wood shingle roof upon the condition that the plaintiff is ordered to remove his asphalt roof and install a wood shingle roof. If the plaintiff does not so elect, the case shall forthwith be dismissed with prejudice and without costs to either party.

*So ordered.*