MARIANNE CONNAUGHTON vs. DOUGLAS D. PAYNE & another.[1]

No. 00-P-1496.

Suffolk. May 9, 2002. - December 5, 2002.

Present: GREENBERG, BECK, & GRASSO, JJ.

*Real Property*, Restrictions.

In a civil action seeking a declaration that G. L. c. 184, § 30, barred the enforcement of a deed restriction that limited the development of the plaintiff's land, there was support in the record for the Land Court judge's determination that the limits imposed on the property continued to accrue actual and substantial benefits to the defendant neighbors, and that changes in the character of the neighborhood did not materially reduce the need for specific performance of the restriction. [655-658]

CIVIL ACTION commenced in the Land Court Department on March 24, 1995.

The case was heard by *Karyn F. Scheier*, J.

*William M. O'Brien* for the plaintiff.

*Brian M. Hurley* for the defendants.

GREENBERG, J. The plaintiff brought this action in Land Court seeking a declaration that G. L. c. 184, § 30, bars the enforcement of a 1965 deed restriction that limits the development of 17.9 acres of her land in Needham (locus).[2] At issue is a restriction created by a deed to the plaintiff's predecessor in title. That

---

[1]Geraldine R. Payne.

[2]The pertinent portion of G. L. c. 184, § 30, reads as follows:

"No restriction shall in any proceeding be enforced or declared to be enforceable, whether or not the time for recording a notice or extension under [G. L. c. 184, § 27, or G. L. c. 184, § 28,] has occurred, or such a notice or extension has been recorded, unless it is determined that the restriction is at the time of the proceeding of actual and substantial benefit to a person claiming rights of enforcement."

restriction, the pertinent part of which is reprinted in the margin,[3] essentially limits the plaintiff's development of her property to four single family homes, rather than the seven she proposes.

At issue are whether there is record support for the Land Court judge's factual determination that the limits imposed on lots E and F continue to accrue actual and substantial benefits to the defendants, and whether, as the plaintiff contends, changes in the character of the neighborhood materially reduce the need for specific performance of the restriction.[4]

We summarize the evidence and the judge's subsidiary findings, saving for further examination those facts more crucial to the ultimate issues and arguments on appeal.

The parties' properties have, since 1989, been situated in a "Rural Residence — Conservation District" so designated under the Needham zoning by-law, although they were, prior to that time, zoned as "Single Residence A." In 1982, South Street, which provides common access to both properties, was designated as a scenic road under G. L. c. 40, § 15C.

According to their testimony, the defendants purchased their land in Needham in large measure because of the challenged

---

[3] "For fifty years from the date hereof no buildings shall be erected, placed or allowed to stand (a) on Lot B on a Plan entitled 'Plan of Land in Needham-Mass' dated April 20, 1929, by Henry F. Bryant Engr's recorded with said Deeds Plan Book 109 Plan 451 of 1929 and on said Lots E and F, (b) on Lot A on said Plan dated April 20, 1929, except one single family dwelling house, and (c) on Lot C on said Plan dated April 20, 1929, except one single family dwelling house in addition to the two single family dwelling houses now on said Lot C. Each dwelling house on Lots A and C may have as appurtenant thereto a private garage and such outbuildings as may from time to time be used in connection with single family dwelling houses situated in similar neighborhoods. No dwelling houses on said Lots A and C shall be used for any other purpose than as a dwelling for one family."

[4] We have omitted discussion in the text of a somewhat unfocused argument that occupies several pages of the plaintiff's brief. It begins with the assertion that the judge erred, as a preliminary matter, by ruling that the plaintiff bears the burden of proof under G. L. c. 184, § 30, on the issue of actual and substantial benefit. The argument was advanced in the Land Court, but the judge rejected it. She ruled that the burden of proof lay with the plaintiff "to establish the enforceability of a restriction in the context of an action, such as the instant case." However, she also ruled that, "[a]s a practical matter, even if [the d]efendants had borne the burden of proof, they would have succeeded at trial in establishing that the [r]estriction is of actual and substantial benefit to them."

restriction, which matched their desire to replicate the wilderness of other property owned by them in northern Ontario, Canada. The defendants occupy a modest single-story structure with two small second stories amidst a vast mixed forest of lowlands, wetlands, uplands, and a two and one-half acre pond. The defendants did not build this house; indeed, a larger house was apparently torn down by the prior owners. Animals, including raccoons, opossums, skunks, and fox, as well as many types of birds — the scarlet tanager, herons, and warblers, among others — also live on the property. The most substantial development that the defendants have brought to their property is a system of foot trails along which they regularly explore and walk their dogs. A garage and tennis court, the latter of which has been "seeded" and largely unused by the defendants, are also on the property. The defendants are active in seeking to preserve the area's natural resources, having volunteered on several town committees and nonprofit organizations. They have also granted in their wills a conservation restriction in favor of the Trustees of Reservations, limiting future development.

Two of the parcels that comprise part of the locus contain the restriction at issue. Designated as lots E and F, they allow for adequate access to the locus. Without lot E, the plaintiff would not have adequate frontage on South Street. Without lot F, the width of a portion of the plaintiff's land would be inadequate for use as a subdivision road. The plaintiff ultimately seeks to subdivide her property into seven lots by clearing and paving the narrowest portion, which has frontage on South Street, into a winding road that ends in a cul de sac and has a landscaped island.

Although there was expert testimony that the most noticeable impact on the locus from the plaintiff's proposed development would arise with the clearing of the proposed lot 7, perhaps the highest point on the plaintiff's property, this testimony did not so much minimize the damage as it attempted to localize its impact. The expert so testifying conceded on cross-examination that development on this portion would require blasting in addition to clearing trees. The plaintiff makes much of the fact that the defendants would not see any of the new homes from their

house except for the one house located on proposed lot 7,[5] but both defendants testified, and the judge found, that the development would affect the use of their trails (from which they would see these proposed homes), as well as species diversity and forest fragmentation on their land. Other experts, including the plaintiff's on cross-examination, echoed this assessment.

The judge credited the expert testimony of the defendants' land planner that the plaintiffs' proposal would require zoning relief and waivers from local subdivision regulations. Specifically, proposed lots 1 and 2, the first two seen after entering from South Street, would lack the required area because of the density of wetlands in those portions. While the defendants recognized that these lots might be combined to satisfy the relevant zoning by-law and subdivision regulations, the plaintiff and her civil engineer testified, and apparently preferred, another possible solution, that is, moving and narrowing the proposed subdivision road closer to the border of her property and abutting another new subdivision (there was evidence that several have come to South Street of late). As originally proposed, though, the subdivision road already required waivers for its length and width. Moreover, these portions of the plaintiff's property would fall under the jurisdiction of the Needham Conservation Commission, requiring separate permits.

*Discussion and analysis.* General Laws c. 184, § 30, provides in part, "No restriction shall in any proceeding be enforced or declared to be enforceable . . . unless it is determined that the restriction is at the time of the proceeding of actual and substantial benefit to [the] person claiming rights of enforcement." There are circumstances where, despite such benefit, the restriction shall not be enforced except by an award of money damages. See *Atwood* v. *Walter*, 47 Mass. App. Ct. 508, 515 (1999); G. L. c. 184, § 30. Under the statute, an "actual and substantial benefit" shall be overcome if:

"(1) changes in the character of the properties affected or

---

[5]The judge found that, including other surrounding properties, the defendants' home is surrounded by more than ninety acres of undeveloped, heavily wooded land that currently contains only three houses and a limited number of secondary structures.

their neighborhood, in available construction materials or techniques, in access, services or facilities, in applicable public controls of land use or construction, or in any other conditions or circumstances, reduce materially the need for the restriction or the likelihood of the restriction accomplishing its original purposes or render it obsolete . . . , or

"(2) conduct of persons from time to time entitled to enforce the restriction has rendered it inequitable to enforce except by award of money damages, or

"(3) in case of a common scheme the land of the person claiming rights of enforcement is for any reason no longer subject to the restriction . . . and appropriate for accomplishment of its purposes, or

"(4) continuation of the restriction on the parcel against which enforcement is claimed or on parcels remaining in a common scheme with it or subject to like restrictions would impede reasonable use of land for purposes for which it is most suitable, and would tend to impair the growth of the neighborhood or municipality in a manner consistent with the public interest or to contribute to deterioration of properties or to result in decadent or substandard areas or blighted open areas, or

"(5) enforcement, except by award of money damages, is for any other reason inequitable or not in the public interest."[6]

The judge's findings as to the existence of an "actual and substantial benefit" for the defendants, G. L. c. 184, § 30, arising from the 1965 restriction, are not without reasonable support in the record. See *Harrod* v. *Rigelhaupt*, 1 Mass. App. Ct.

---

[6]The judge found, and the parties have not disputed, that there were neither allegations nor evidence that continued enforcement of the restriction would damage the plaintiff's property or result in "decadent or substandard areas or blighted open areas." The parties also do not dispute the judge's finding that the defendants are entitled to enforce the restriction, and that they "have not engaged in any behavior that would render it inequitable for them to enforce the restriction." The judge further noted, and we agree, that the restriction here was not imposed pursuant to a "common scheme," and thus, the portions in the statute dealing with that type of situation are not raised.

376, 385-386 (1973); *Atwood* v. *Walter, supra* at 513. See also *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 509-510 (1997) (discussing meaning of phrase "clearly erroneous" in Mass.R.Civ.P. 52(a), 365 Mass. 816 [1974]). Moreover, we would be hard pressed to reach the opposite result since the judge took a view of the properties at issue. See *Shalbey* v. *Board of Appeal of Norwood*, 6 Mass. App. Ct. 521, 529 (1978). The judge noted, in particular, that the purpose of the restriction, which was to limit development on the plaintiff's property, continues to hold vitality for the defendants, who seek to maintain and nurture "the ecosystem that currently thrives on the [defendants' p]roperty." As support for this holding, the judge was warranted in crediting the testimony of experts and the defendants (to which there were no objections) that the proposed development of the plaintiff's property would upset the species diversity and populations of both plant and animal life on the defendants' property. See *Whitehall Co., Ltd.* v. *Barletta*, 404 Mass. 497, 503 (1989). There was also evidence supporting the conclusion that the restriction, originally taken in exchange for a grant of two parcels (lots E and F) to facilitate further development of the plaintiff's property, did not entirely restrict such development.

The plaintiff contends that the benefits emphasized by the defendants are merely "subjective," likening this case to *Garland* v. *Rosenshein*, 420 Mass. 319, 321 (1995). In *Garland*, the Supreme Judicial Court's conclusion that an "actual" benefit "must come from the existence and enforceability of the restriction, rather than from the price of releasing the restriction," *ibid.*, was tied to the circumstances of that case, where the defendant sought to enforce the restriction but owned no land benefiting from it. *Id.* at 321-322. Here, by contrast, the defendants own the same land that the grantor who originally imposed the restriction sought to protect with the restriction. See *Exit 1 Properties Ltd. Partnership* v. *Mobil Oil Corp.*, 44 Mass. App. Ct. 571, 575 (1998). Cf. *Gulf Oil Corp.* v. *Fall River Hous. Authy.*, 364 Mass. 492, 500 (1974) ("landowner's motive does not affect his right to enforce a restriction"). The plaintiff's attempt to localize the impact that would be felt on the defendants' property does not make that impact any less

"substantial" under the statute. *Blakeley* v. *Gorin*, 365 Mass. 590, 604 (1974) ("Any decrease . . . is a violation of th[e] restriction and a detriment to the propert[y] it benefits . . . .")

In determining the case adversely to the plaintiff, the judge recognized that some development has recently appeared along South Street, even nearing the plaintiff's and defendants' properties. Contrary to the plaintiff's argument, however, the change in the applicable zoning district and the designation of South Street as a scenic road, G. L. c. 40, § 15C, do not preempt the restriction. Rather, the resulting limitations indicate not a "slacken[ing,] but [a] tighten[ing]" of the zoning regulations. *Cogliano* v. *Lyman*, 370 Mass. 508, 513 (1976). Further, the judge noted that the relative isolation of the defendants' property left a sizable area for the restriction to protect from the effects of "encroaching development." This case fits the description expressed in *Cogliano*: "the neighborhood still maintain[s] its essential character, although against some odds, with the restriction serving, as it was intended to serve, to reduce those odds or prevent their getting longer." *Id.* at 512. See *Harrod* v. *Rigelhaupt*, 1 Mass. App. Ct. at 386. Contrast *Blakeley* v. *Gorin, supra* at 605-606. The judge's conclusion, that "limited development" was permitted by the restriction as well as the applicable by-law and subdivision regulations, was correct.

Finally, the plaintiff points to the last possibility in G. L. c. 184, § 30, arguing that enforcement of the 1965 restriction, except by award of money damages, is "inequitable and against the public interest." Although the plaintiff focuses on "the balance of equities between the parties," *Blakeley* v. *Gorin, supra* at 607, we think that her efforts are again misdirected. The restriction acts in a manner parallel to Needham's objectives, as evidenced by the by-law and regulations, in seeking to mitigate the effects of suburban sprawl, some of which might be seen as inevitable, and in securing a more rural flavor. By enforcing the restriction, the judge was not faced with a choice between undeveloped land and an apartment-hotel complex, with the complex "providing numerous benefits to the general public." *Id.* at 599, 606-607.

*Judgment affirmed.*